**Berne H. EVANS, III, et al.,**
**Plaintiffs-Appellants,**

**v.**

**SUNTREAT GROWERS & SHIPPERS, INC., a California Corporation, Defendant-Appellee.**

**No. 9–29.**

Temporary Emergency Court of Appeals.

Argued Dec. 30, 1975.

Decided Feb. 25, 1976.

As Modified on Denial of Rehearing and Rehearing En Banc April 1, 1976.

Kendall L. Manock, of Baker, Manock & Jensen, Fresno, Cal., with whom James M. Phillips, Fresno, Cal., was with him on the brief, for appellants.

J. Thomas Crowe, of Crowe, Mitchell & Crowe, Visalia, Cal., with whom Daniel W. Crowe, Visalia, Cal., was with him on the brief, for appellee.

Before CARTER, CHRISTENSEN and ESTES, Judges.

PER CURIAM:

Appellants commenced this action under the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note (Supp.1975), for recovery of treble damages and attorney's fees. Appellants claim a violation of the Act, as implemented by the Regulations, 6 C.F.R. §§ 300.11, 300.13, 300.14 and 300.5, involving the crop years 1970–1971, 1971–1972, and 1972–1973. Appellants abandoned their claim based on the first crop year of 1970–1971.

The trial court, after trial, filed a memorandum decision in favor of appellee and directed that proposed findings of fact, conclusions of law and judgment be prepared.

In its memorandum decision the court stated:

"Defendants' [sic] evidence indicates that its charges are based on a fixed amount per field box, plus a share of the operating costs of the corporation. Although plaintiffs' share of the operating costs increased within the amounts permitted by the Act, their charges for processing their fruit actually decreased from 10 cents per field box for 1970–71, 8½ cents for 1971–72 and 6½ cents for 1972–73.

"Thus the charges for the services rendered by defendant to plaintiffs were not in violation of the Economic Stabilization Act of 1970. It should also be noted that defendant's profit did not increase during the years in question which was the intent of the Act.

"It follows that defendant did not intentionally violate the provisions of the Act."

The memorandum decision over-simplified the issue by not mentioning the profit margin test set forth in the Regulations in 6 C.F.R. §§ 300.14 and 300.5, but instead stated that the court found that the appellee's profits had decreased in each of the three successive crop years.

The formal findings of fact signed by the trial court stated:

"13. The defendant did not charge the plaintiffs or any of its growers for its services in handling their citrus fruit during the 1970–71 citrus fruit season, or during the 1971–72 citrus fruit season, or during the 1972–73 citrus fruit season on the basis of any flat rate per packed carton, or on any packed carton basis.

"14. That except as hereinbefore expressly found to be true, each and all of the allegations contained in paragraphs numbered 8 through 38 in the Plaintiffs' Complaint are not true.

"15. The defendant's net operating profit for its fiscal year 1970–71 was the sum of $135,562.00; its net operating profit in its fiscal year 1971–72 was the sum of $91,261.00; and its net operating profit in its fiscal year 1972–73 was the sum of $64,439.00; and the profit margin of said defendant during said fiscal years of 1971–72 and 1972–73 did not equal or exceed the profit margins allowable under the Phase II or Phase III Price Control Regulations issued pursuant to the Economic Stabilization Act of 1970 as amended."

Appellants make several attacks on the findings of fact.

(1) That Finding # 13 was erroneous in finding that appellee did not charge appellants on any flat rate per packed carton or any packed carton basis.

Appellants on page 1 of their reply brief state: "All the facts listed in defendant's [appellee's] statement of facts from page 2:8 through 5 of defendant's [appellee's] appellate brief are true with the exception of the statement on page 5, line 9–10, which states that defendant [appellee] reduced its charges for services. . . . ."

On page 5 of appellee's brief referred to above, we find the following: ". . . the net operating profit of the defendant [appellee] declined from $135,562.00 in its 1970–1971 fiscal year to $91,261.00 in its 1971–1972 fiscal year, and again declined to $64,439.00 in its 1972–1973 fiscal year. . . ."

* * * * * *

"The charts prepared by the witness Benneyan [witness for the appellants] and on which plaintiffs [appellants] rest their case were prepared on a packed carton basis, although said witness was compelled to admit that he found absolutely nothing in the books and records of the defendant [appellee] that indicated that said defendant [appellee] had ever charged or attempted to charge or bill its growers for handling their fruit on any packed carton basis . . . [T]he witness Benneyan conceded that the charges of $1.10, $1.13, $1.23 and $1.39 per packed carton set forth in his Price Comparison Sheet [Plaintiffs' Exhibit 2] are all calculated figures made by him and that the same are not reflected in the books and records of the defendant [appellee]."

The foregoing appears to lend credence to the trial court's finding that appellee did not charge appellants on any packed carton basis; but whether this is so or not, it is thereby shown that the problem before the court was complex and that the substance of its decision should not be lightly disregarded. There is substantial evidence in the record supporting the trial court's ultimate finding of fact against appellants.

(2) Appellants attack Finding # 14, which stated that certain allegations of the complaint are not true. Appellants concede that as to most of the paragraphs cited, the finding is correct. At argument counsel stated he did not draw the complaint but it is apparent he proceeded to trial on it without bothering to correct or strike the faulty paragraphs. We cannot say the finding was clearly erroneous.

(3) That Finding # 15 was not a finding of fact but instead was a conclusion of law, and was erroneous. We hold that it was an ultimate finding of fact that the margin of profit was not increased above the permissible margin and a conclusion of law that no violation occurred.

■ The trial court did not make findings of special facts or computations on which it based Finding # 15. Appellants did not propose additional or alternate findings nor did they apply to the district court for an amendment of its findings under Rule 52(b) F.R.Civ.P. *See Kennedy v. United States,* 115 F.2d 624 (9 Cir. 1940). We agree with the statement that

"It would seem that if a party is not willing to give a trial judge the benefit of suggested findings and conclusions, he is not in the best of positions to complain that the findings made and conclusions stated are incomplete. *Sonken-Galamba Corp. v. Atchison, T. & S. F. Ry.,* 34 F.Supp. 15, 16 (W.D.Mo.1940), *aff'd* 124 F.2d 952 (8 Cir. 1942), *cert. den.,* 315 U.S. 822 [62 S.Ct. 917, 86 L.Ed. 1218] (1942)."

Appellants rightly contend that such failure does not prevent them from attacking a finding which is erroneous. But as to Finding # 15 they cannot complain of lack of specificity in the findings, when they proposed nothing to this effect.

For example, in a personal injury case the trial court may make a general finding that plaintiff has suffered general damages in X amount and special damages in Y amount. If the defendants do not request a breakdown of the elements of X or Y before the findings are signed, they cannot later complain on appeal. Or, for example, in a contract case, the court may make general findings of the amount of damages where various elements of damages were proved. But if the opposing party does not request a breakdown of the items, he cannot complain on appeal.

■ Finding # 15 is not clearly erroneous and it is sufficient. Although the findings are somewhat conclusionary in nature they should be liberally construed, and in that context we feel that they are sufficiently comprehensive and pertinent to the

issues to provide a basis for decision. The Supreme Court said in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, at 123, 89 S.Ct. 1562, at 1576, 23 L.Ed.2d 129 (1969):

"The question for the appellate court under Rule 52(a) is not whether it would have made the findings the trial court did, but whether 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.'" Citing *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 1147 (1948) and other cases.

There was conflicting evidence before the trial court. Appellants rely on the testimony of the expert accountant and his opinions based on the calculations. The appellee relies on the testimony of its accountant. The appellee's records were in evidence. Charts prepared by appellants' accountant were changed from time to time as the trial progressed.

In addition, the documentary evidence was complex, and different interpretations were placed on it by the appellants' and appellee's witnesses.

The trial court was entitled to rely on the evidence favorable to appellee and to credit the testimony of appellee's witness over that of the appellants' witness.

Unless the trial court was clearly wrong in it fact-finding, the judgment must be sustained.

Although the Finding, # 15, that the appellee did not make a profit in each of the successive crop years, does not close out the appellants because of the test set forth in Regulations 6 C.F.R. §§ 300.14 and 300.5, it does have significance in the case:

(1) Finding # 15 (and # 20 and # 21) show this was not a case of "gouging" or increasing of the gross amount of appellee's profits, and

(2) The findings show lack of intent to violate the Act and support the part of the judgment refusing to allow attorney's fees or treble damages.

(3) Most importantly, there was no evidence of probative value in the record of any bona fide claim for refund in any sum certain to apprise the appellee of any overcharge made by it. It would appear appellants brought this action for treble damages, alleging a willful violation of the Act, to avoid their failure to present a bona fide claim for any overcharge. That failure in view of the findings of the court negating any willful violation was fatal to appellants' claim. *Manning v. University of Notre Dame Du Lac*, 484 F.2d 501 (Em.App.1973).

Section 210 of the Economic Stabilization Act reads:

"Where the overcharge is not wilful within the meaning of section 208(a) of this title, *no action for an overcharge may be brought* by or on behalf of any person *unless such person has first presented to the seller* or renter *a bona fide claim* for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim." (Emphasis added).

Also, 6 C.F.R. § 300.11(b), states:

"No person *may knowingly pay a price with respect to any sale or lease of an item of property or a service for use in his trade or business which exceeds the base price* (or other price or other price authorized under this part) for that item of property or that service. *However, this paragraph (b) does not apply to the sale* or lease of an item of property or a service to any person under circumstances of economic or other coercion *in which the buyer* or lessee, because of his need for that property or service, *had no reasonable alternative but to pay* the illegal price, *and he reports the sale or lease to*

*the Internal Revenue Service for investigation* as soon as is reasonably possible after it occurs." (Emphasis added).

There is no evidence that any of the appellants even mentioned their complaint to the Internal Revenue Service, which had accountants, expertise and responsibility in these matters. There is no credible evidence that appellee "intentionally" violated any provisions of the Act which would nullify the specific findings of the trial judge to the contrary in Findings of Fact # 20 and # 21.

Judgment affirmed.