**Salvatore D'EMANUELE,**
**Plaintiff–Appellant,**

**v.**

**MONTGOMERY WARD & CO., INC., Long Term Disability Plan & Trust; Montgomery Ward & Company, Inc., et al., Defendants–Appellees.**

No. 88–6505.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1989.

Decided June 5, 1990.

As Amended on Denial of Rehearing
Aug. 30, 1990.

Herbert Hafif, Law Office of Herbert Hafif, Claremont, Cal., James J. Guziak, James J. Guziak, A P.C., Santa Ana, Cal., for plaintiff-appellant, Salvatore D'Emanuele.

Richard D. Roth, Reid & Hellyer, Riverside, Cal., for the defendants-appellees Montgomery Ward & Co., Inc., and Montgomery Ward & Co., Inc., Long Term Disability Plan and Trust.

Before WALLACE, PREGERSON and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Salvatore D'Emanuele appeals from the order of the district court awarding him attorney's fees of $76,125.00 in his ERISA action pursuant to 29 U.S.C. § 1132(g). D'Emanuele requests that we vacate and remand the district court's award of attorney's fees. D'Emanuele claims that the district court erred by (1) failing to apply properly the hybrid lodestar/multiplier analysis for fee determination; (2) failing to offer a clear and concise explanation to support the fee award; and (3) failing to conduct a hearing in violation of due process. In addition, both D'Emanuele and Montgomery Ward seek attorney's fees for this appeal. We vacate the district court's order and remand with directions.

I. PERTINENT FACTS

On October 3, 1983, after exhausting his administrative remedies, D'Emanuele filed a *pro se* complaint in state court for long term disability benefits against Montgomery Ward & Co. and Montgomery Ward & Co. Long Term Disability Plan and Trust.

Montgomery Ward removed the case to federal court. D'Emanuele, facing involuntary dismissal, obtained counsel. An amended complaint was filed on April 24, 1985, seeking relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001.

Montgomery Ward filed a motion for summary judgment on November 11, 1986. D'Emanuele filed a cross motion for summary judgment on January 5, 1987. While the summary judgment motions were under submission, D'Emanuele filed a second amended complaint adding a claim under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961–1968. On August 25, 1987, the district court issued its Memorandum of Decision and Order on the summary judgment motions. The district court, in denying Montgomery Ward's motion and granting D'Emanuele's motion in part, held that the Montgomery Ward & Co. Long Term Disability Plan and Trust "(a) imposed a substantive standard not required by the provisions of the Plan Document; (b) committed prejudicial violations of plaintiff's ERISA procedural due process rights; (c) rendered a final decision that is not supported by substantial evidence; and (d) acted in bad faith."

Thereafter, the parties entered into settlement negotiations. A settlement was reached on November 25, 1987. The settlement agreement was filed with the district court under seal. On February 1, 1988, the district court approved the settlement. Pursuant thereto, the ERISA and RICO claims were dismissed with prejudice. The agreement further provided that D'Emanuele would receive attorney's fees in an amount deemed reasonable by the district court.

A motion for attorney's fees was filed on May 24, 1988. Counsel for D'Emanuele requested compensation for 1242.48 hours of his time at the rate of $175/hour ($217,-434.00), 37.81 hours of his associate attorney's time at $135/hour ($5,104.34), and 153 hours of his legal assistants' time at $65/hour ($9,945.00) for a total fee of $232,483.34. D'Emanuele's attorney also

requested that the fee be increased by a multiplier of 2.5 for work completed prior to the date the district court granted D'Emanuele partial summary judgment and by a multiplier of 1.75 for the work necessary to effect a settlement for an additional $312,-191.59. The total fee requested was $544,-674.93. Payment of attorney's fees for the time required for the preparation of the fee application was also requested. Counsel informed the district court that he worked 134.6 hours on the motion for attorney's fee. At $175 an hour, the amount claimed for preparation of the motion for attorney's fees totaled $23,555.

The district court scheduled a hearing for determination of attorney's fees on June 20, 1988. Thereafter, the district court vacated the hearing date and took the issues raised concerning the fee application under submission.

On September 21, 1988, the district court filed its order awarding D'Emanuele attorney's fees. The order provides as follows:

The court, after carefully considering all papers on file concerning plaintiff's application for attorney's fees in the above-entitled action, makes the following order:

(1) Plaintiff is awarded attorney's fees in the amount of $76,125.00. This amount is reasonable given the nature and resolution of this case, and reflects a finding by the Court that plaintiff's reasonable attorney's fees should be 525 hours at $145.00 per hour. The Court, on several occasions, noted its concern over the manner in which plaintiff's counsel was proceeding with this case. For reasons recited at an earlier sanctions proceeding, the Court will not reward plaintiff's counsel for time put into such matters as rejected filings, responses to sanctions, ex parte motions to shorten time, unreasonably lengthy time put into research, and overly voluminous filings, and, accordingly, has discounted plaintiff's submitted hours to a reasonable amount.

2. The Court will not upwardly adjust this award of fees, as plaintiff's counsel suggests.

## II. THE APPROPRIATE LEGAL STANDARDS

### A. Applicability of Lodestar Analysis to ERISA

■ D'Emanuele contends that the district court failed to make a proper determination of the "lodestar" figure or to apply the relevant factors for awarding attorney's fees under the law of this circuit. D'Emanuele also contends that the district court should have considered the factors set forth in *Hummell v. S.E. Rykoff*, 634 F.2d 446, 452–53 (9th Cir.1980), in fixing the proper fee. In response, Montgomery Ward argues that this circuit has never applied the lodestar/multiplier factors in ERISA cases.

D'Emanuele's reliance on *Hummell* is misplaced. *Hummell* does not apply to the determination of the *amount* of attorney's fees. The factors set forth in *Hummell* guide the district court in determining whether *any* attorney's fees should be granted under 29 U.S.C. § 1132(a). Because the parties stipulated that attorney's fees should be granted, the *Hummell* factors have no application.

We next turn to the question whether the lodestar/multiplier approach is applicable in calculating attorney's fees under ERISA. Montgomery Ward contends that the lodestar/multiplier approach is not required in ERISA cases. The Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), stated that the standards for determining fee awards set forth in that opinion "are generally applicable in all cases in which congress has authorized an award of fees to a 'prevailing party.'" *Id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7. Unlike the attorney's fee provision of 42 U.S.C. § 1988 that was at issue in *Hensley*, however, ERISA does not limit attorney's fees to a "prevailing party." *See* 29 U.S.C. § 1132(g) (1982) (allowing attorney's fees to parties at court's discretion). This distinction does not affect the applicability of *Hensley* to the calculation of an attorney's fee award under ERISA. Those statutes that limit an award to the "prevailing party" control the decision whether a party is entitled to any

fees. The fact that Congress has permitted an award of fees to a non-prevailing party in ERISA cases should not affect the standards for determining the *amount* of attorney's fees. *See Hensley*, 461 U.S. at 434–37, 103 S.Ct. at 1939–41 (discussing the appropriate methods for determining the extent to which a party is a "prevailing party"). The principle that different rules, namely the *Hummell* factors, may apply under ERISA in determining whether attorney's fees should be awarded does not affect the calculation of the amount of attorney's fees once the decision has been made to grant them.

■ The analysis adopted in *Hensley* for determining attorney's fee awards is a hybrid lodestar/multiplier approach. We affirmed the use of the lodestar/multiplier factors in an ERISA case in *Kim v. Fujikawa*, 871 F.2d 1427, 1434–35 (9th Cir. 1989), although we did not expressly adopt its use for all ERISA cases. *Id. Hensley* does not preclude us from applying the lodestar/multiplier in ERISA cases in determining the amount of attorney's fees. Accordingly, we expressly hold that the lodestar/multiplier factors should be considered in determining the amount to be awarded in an ERISA case.

### 1. *The "Lodestar" Analysis*

■ The lodestar/multiplier approach adopted by the Supreme Court in *Hensley* is essentially a two-part test. *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir.1990). First, the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir.1988). Second, the court may increase or decrease the lodestar fee based on factors identified by this circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), that are not subsumed within the initial calculation of the lodestar. *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9 (referring to factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), which were adopted by this circuit in *Kerr*, 526 F.2d at 70); *Cunningham*, 879 F.2d at 484. Such upward or downward adjustments are the exception rather than the rule since the lodestar amount is presumed to constitute a reasonable fee. *Phelps Dodge Corp.*, 896 F.2d at 406; *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.1987).

In *Kerr* we adopted the following guidelines as appropriate factors to be considered in determining the proper amount of a reasonable attorney's fee award:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.2d at 70. In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court held that because some of these factors are subsumed in the initial lodestar calculation, they should not be considered in deciding whether to apply a multiplier. *Id.* at 898–900; *Clark v. City of Los Angeles*, 803 F.2d 987, 990 n. 3 (9th Cir.1986). The subsumed factors are: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained and the superior performance of counsel. *Blum*, 465 U.S. at 898–90, 104 S.Ct. at 1548–50; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1212. "Those *Kerr* factors that are not subsumed may support adjustments in rare cases, provided the district court states which factors it is relying on and explains its reasoning." *Cunningham*, 879 F.2d at 487.

■ In determining the original lodestar figure, "[t]he district court ... should exclude from this initial calculation hours that were not 'reasonably expended.' Cases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939 (citations omitted); *Chalmers*, 796 F.2d at 1210. Once the number of hours is set, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers*, 796 F.2d at 1210. This determination "is not made by reference to rates actually charged by the prevailing party." *Id.* The court should use the prevailing market rate in the community for similar services of lawyers "of reasonably comparable skill, experience, and reputation." *Id.* at 1210–11. Either current or historical prevailing rates may be used. *Missouri v. Jenkins*, — U.S. —, —, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir.1984). The use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable; the district court must look to the "totality of the circumstances and the relevant factors, including delay in payment." *Jordan*, 815 F.2d at 1262 n. 7.

### 2. *The Multiplier*

■ There is a "strong presumption" that the lodestar figure computed by the method outlined above represents a "reasonable" attorney's fee. *Phelps Dodge Corp.*, 896 F.2d at 406; *Jordan*, 815 F.2d at 1262 (quoting *Blum*, 465 U.S. at 895–901, 104 S.Ct. at 1547–50). Nevertheless, in certain "rare, exceptional cases" the lodestar figure may be adjusted upward or downward in consideration of the *Kerr* factors that are not subsumed. *Cunningham*, 879 F.2d at 487. "[W]e will give courts latitude to balance and weigh permissible factors" although "reliance on factors ... subsumed in the lodestar determination will be considered an abuse of the trial court's discretion." *Id.*

■ One exceptional circumstance that may lead to an adjustment of the lodestar figure is whether payment for the attorney's services is contingent upon success and the attorney bears the risk of nonpayment in case of failure. We conclude that the presence of a risky contigent fee arrangement constitutes an exceptional circumstance requiring enhancement if the test set forth below is met. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 731, 107 S.Ct. 3078, 3089–90, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*)[1]; *Fadhl v. City of San Francisco*, 859 F.2d 649, 650 (9th Cir.1988) (*Fadhl III*).

In *Delaware Valley II*, a majority of the Court held that enhancing a fee award for contingency is permissible if the two prerequisites identified in Justice O'Connor's concurrence are met. First, the fee applicant must establish that "without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" Second, any enhancement for contingency must reflect "the difference in market treatment of contingent fee cases *as a class*, rather than ... the 'riskiness' of any particular case." The fee applicant bears the burden of proving the degree to which the relevant market compensates for contingency.

*Fadhl III*, 859 F.2d at 650 (citations and footnote omitted) (emphasis and ellipsis in original).

### B. Explanation of The Fee Award

While emphasizing that fee awards are left to the discretion of district courts because they involve a determination of "what essentially are factual matters[,]" the Supreme Court stated: "[i]t remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

We have discussed what constitutes a concise but clear explanation in several opinions. In *Cunningham*, we stated that "[c]ourts need not attempt to portray the

---

1. *Delaware Valley II* was decided by a split court. Justice O'Connor's concurring opinion constitutes the Supreme Court's holding in the case. *Fadhl v. City of San Francisco*, 859 F.2d 649, 650 n. 1 (9th Cir.1988) (*Fadhl III*).

discretionary analyses that leads to their numerical conclusions as elaborate mathematical equations, but they must provide sufficient insight into their exercises of discretion to enable us to discharge our reviewing function." 879 F.2d at 485. We held in *Cunningham* that the district court's award satisfied the "concise but clear" requirement since it "gave us a good indication of how the court's discretionary authority was exercised in this case." *Id.* We recognized in *Cunningham* that the court did not engage in an "arbitrary slashing of the lodestar amount." *Id.* at 486. The district court "considered among several factors, *Cunningham*'s failure to produce evidence to back up his allegations against four of the seven defendants." *Id.* The district court also "analyzed the importance of each defendant to Cunningham's overall case" considering the claims brought against each one "or its ability to shed light on 'the significance of the overall relief obtained.'" *Id.* (quoting *Greater Los Angeles Council on Deafness v. Community Television of Southern California*, 813 F.2d 217, 222 (9th Cir.1987)).

■ Although we affirmed the award in *Cunningham*, we commented that "we would have preferred a more straightforward calculation of the hours reasonably spent." *Id.* at 485. Nevertheless, we concluded that the district court's analysis substantially complied with the clear and concise requirements.

*Cunningham* instructs that the district court must provide some clear indication of how the district court exercised its discretion or the fee award will have to be remanded to provide such explanation. In *Cunningham*, the district court reduced the hours claimed for plaintiff's law clerks because of inadequate documentation but provided no explanation for the amount of the reduction. *Id.* at n. 1. We found such a reduction "insufficiently explained." *Id.* We said: "The court nowhere states ... what portion of the 290 hours claimed for the work *was* documented. The court merely uses its assertion of inadequate documentation to support further reduction of the fee award below the lodestar." *Id.*

In *Chalmers*, we vacated and remanded an attorney's fee award for failure to provide a clear but concise explanation. "[T]he district court failed to indicate what number of hours were being compensated and what hourly rate was applied." 796 F.2d at 1213. In addition, the district court reduced the award to reflect the plaintiff's lack of complete success. We stated, however, that there was "no way for us to know by what amount." *Id.* We explained that the district court must "articulate with sufficient clarity the manner in which it makes its determination of a reasonable hourly rate and the number of hours which should be reasonably compensated." *Id.* at 1211.

In *Jordan v. Multnomah County*, we remanded an attorney's fee award where the district judge "made no finding on the sufficiency of the evidence" despite the fact that the fee claimant submitted sufficiently detailed records. 815 F.2d at 1263. We rejected the district court's use of "an unsupported 'range' hourly rate" multiplied by an unsupported " 'range' of hours" notwithstanding the fact that the figures used fell within the reasonable range. *Id.* Similarly, in *Phelps Dodge Corp.*, we reversed and remanded an attorney's fee award for 1500 hours when documentation showed that 3,656.40 hours had been expended. We were "unable to review the district court's determination ... [because of the district court's] inadequate documentation of the reasons for the wholesale reduction of hours." 896 F.2d at 407.

In *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830 (9th Cir.1982), we remanded an attorney's fee award for lack of an adequate evidentiary basis and failure to consider the *Kerr* factors. *Id.* at 838–39. We said that "the need for meaningful review requires remand where, as here, the record on appeal fails to indicate which, if any, of the *Kerr* guidelines were considered." *Id.* However, not all of the *Kerr* factors need be considered if the most relevant factors are discussed and the decision is sufficiently detailed to provide meaningful review. *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 785 (9th Cir.1986).

Finally, "[i]f a fee enhancement is granted, the court should explain with particularity its reasons for finding that there are factors, not already subsumed within the initial lodestar calculation" that support such an enhancement. *Hall v. Bolger,* 768 F.2d 1148, 1151 (9th Cir.1985). Given that the lodestar figure is presumptively reasonable, any adjustments must be supported by "specific evidence on the record and detailed findings by the district court." *Jordan,* 815 F.2d at 1262. "A mere statement that a court has considered the *Kerr* guidelines does not make a decision within the court's discretion." *Quesada v. Thomason,* 850 F.2d 537, 539 (9th Cir.1988).

The district court's explanation must reflect the following analysis: First, the court must set out the reasonable number of hours and the reasonable hourly rate, and must briefly explain those figures. *Chalmers,* 796 F.2d at 1213. The district court should discuss only those *Kerr* factors that are relevant to the court's decision; each and every factor need not be discussed. *Probe,* 780 F.2d at 785. Where detailed records on hours and rates are submitted to and rejected by the district court, the district court should explain the reasons for rejecting the proffered proof. *See Phelps Dodge Corp.,* 896 F.2d at 407; *Jordan,* 815 F.2d at 1263.

Second, the district court must explain any increase or decrease in the presumptively reasonable lodestar amount, basing its adjustment only on *Kerr* factors not subsumed in the lodestar calculus. *Id.* at 1262. Where a request for application of a multiplier to the lodestar amount is made and supported by evidence, but the district court rejects the request, the court should briefly explain the reasons for not applying a multiplier.

## III. THE APPLICATION OF OUR CIRCUIT LAW TO THE INSTANT MATTER

### A. The Fee Award

The district court's award of attorney's fees in this case must be remanded because the district court failed to present a clear explanation of the reasons that support its award of fees. Without a more detailed explanation we cannot determine the manner in which the district court exercised its discretion. This is especially true in the instant matter, in light of the extensive time records submitted by D'Emanuele's counsel, and the lack of any rebuttal evidence provided by Montgomery Ward.

First, the district court did not explain the reasons for reducing the hours claimed to be reasonable by D'Emanuele's attorney to 525 hours. Even if we subtract all of the hours mentioned by the district court "for time put into such matters as rejected filings, responses to sanctions, ex parte motions to shorten time, unreasonably lengthy time put into research, and overly voluminous filings" we are left with an hourly figure significantly higher than the number of hours calculated by the court.

Guziak documented 1242.48 hours. If we decrease this amount by 350 hours for the time spent in research, 34 hours for time allotted to ex parte motions and Orders to Show Cause, 65 hours for the preparation of the Memorandum of Contentions, and 21.65 hours claimed for preparing a response to the imposition of sanctions, the time expended in this matter by Guziak equals 771.83 hours. The court's calculation appears to assume that *no* research time should be compensated. The court also appears to have declined to make an award for the hours claimed for the services of an associate attorney and a paralegal or the time spent on preparing the RICO claim.

Although we recognize the power of the district court to "exclude ... hours that were not 'reasonably expended[,]'" *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940, the court's explanation is insufficient for us to perform our responsibility to determine the district court's reasons for excluding the hours claimed and documented by Guziak in this matter. For example, we cannot discern from the court's explanation whether the results obtained in this litigation were considered by the district court as a reason for increasing or decreasing the fee award. We are also unable to decide

whether hours spent on the RICO cause of action were disallowed as time spent on an unsuccessful claim. The record does not disclose whether all time spent on research was disallowed and, if so, why.

In determining a reasonable number of hours "the district court should make a more detailed analysis of the time records presented." *Frank Music Corp. v. MGM, Inc.*, 886 F.2d 1545, 1557 (9th Cir.1989). We note that Montgomery Ward determined that 674.24 hours was a reasonable amount of time for this case. The district court has failed to explain why it rejected this figure and reduced the number of hours to 525. Finally, the district court failed to explain whether it used a multiplier to *reduce* the fee award.

### Paralegals' and Associates' Time

■■■ The district court failed to explain whether it disallowed all the time expended by associate attorneys (37.81 hours) and legal assistants (153 hours). The failure to make an award for the hours claimed and documented for associate attorneys and legal assistants is an abuse of discretion, absent some explanation that the time was duplicative or insufficiently documented. *See Chalmers*, 796 F.2d at 1210 (allowing reduction in documented hours if they are duplicative or unnecessary). The Supreme Court has recently stated that a reasonable attorney's fee includes the work of attorneys and support staff, such as paralegals "whose labor contributes to the work product." *Missouri v. Jenkins*, —— U.S. at ——, 109 S.Ct. at 2470.

### The Hourly Rate

"The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those for similar services of lawyers of reasonably comparable skill and reputation." *Jordan*, 815 F.2d at 1263. The court set the compensation rate at $145 per hour. The hourly rate fixed by the court is less than D'Emanuele requested and more than Montgomery Ward suggested. The court did not explain its reasons for arriving at this figure. We cannot determine on the record whether the amount selected was reasonable.

### Multiplier

■■■ D'Emanuele contends that the district court abused its discretion in refusing to enhance his attorney's fee award by a multiplier. We review the district court's decision regarding the application of a multiplier for abuse of discretion. *Hall*, 768 F.2d at 1150. The district court did not explain whether it considered if the evidence was sufficient to demonstrate that D'Emanuele's attorney had a "risky" contingent fee arrangement or how the relevant market treats contingency in ERISA cases as a class. In this regard, the district court should not consider the individual riskiness of D'Emanuele's case. Such an explanation is necessary so that we may determine whether the tests set forth in *Fadhl III*, 859 F.2d at 650, were met. The district court did not explain its reasons for failing to apply a multiplier. We cannot tell from this record what consideration, if any, it gave to the evidence regarding the difficulty of attracting counsel to ERISA cases or that D'Emanuele's fee agreement with attorney Guziak was a "risky" contingent fee arrangement. As explained above, consideration of these factors is required when the district court determines whether enhancement of the lodestar amount for contingency is warranted. *Delaware Valley II*, 483 U.S. at 733–34, 107 S.Ct. at 3090–91; *Fadhl III*, 859 F.2d at 650.

### Award of Fees for Preparation of the Application

D'Emanuele contends that the district court abused its discretion in failing to make an award for the preparation of the motion for attorney's fees. Montgomery Ward contends that in determining reasonable hours the district court must have included the time spent on preparation of the motion for attorney's fees. The district court's order simply does not address this contention.

In *Clark*, we held that work performed on a motion for fees under 42 U.S.C. § 1988 is compensable. *Id.* at 992. In *Hensley*, the Supreme Court held that the time expended in preparing a motion for fees in ERISA cases should be compensat-

ed. The district court's failure to discuss the reasonableness of the 134.6 hours claimed and documented by D'Emanuele's attorney for the preparation of the motion for attorney's fees makes it impossible for us to determine whether the district court considered or rejected this request.

Our dissenting colleague would affirm, notwithstanding the failure of the district court to articulate the clear and concise explanation mandated by the Supreme Court's decision in *Hensley*, because "D'Emanuele failed to make a motion for more specific findings pursuant to Fed.R. Civ.P. 52(b)." Dissenting opinion at 1389. The dissent assumes that Rule 52 applies to a motion for attorney's fees. No relevant authority is cited for this alarming proposition. Neither party has argued that Rule 52(b) is applicable to a district court's disposition of a motion for attorney's fees. None of the cases cited in the dissenting opinion concern an order granting or denying a *motion*.

In *Reliance Finance Corp. v. Miller*, 557 F.2d 674 (9th Cir.1977), appellants claimed that the district court failed to make findings concerning all theories of recovery alleged in their *complaint*. We rejected this contention because appellants failed to "apply to the district court for an amendment of its findings under Rule 52(b) F.R. Civ.P." *Id.* at 681 (quoting *Evans v. Suntreat Growers & Shippers, Inc.*, 531 F.2d 568, 570 (Temp. Emer. Ct.App.1976)).

In *Kennedy v. United States*, 115 F.2d 624 (9th Cir.1940), the appellee filed a motion in this court requesting that we require the district court to enter a finding favorable to the moving party. *Id.* We rejected the motion because it "failed to state its points and authorities." *Id.* After noting that appellee had not sought amendment of the district court's findings under Rule 52(b), we held that "[t]his court has no general authority over the district court to require any such judicial act as the making of findings at the request of one not appealing from the district court's action." *Id.* at 625.

. In the third and final case relied upon by the dissent, *Evans v. Suntreat Growers*

*and Shippers, Inc.*, 531 F.2d 568 (Temp. Emer. Ct.App.1976), appellants contended that the trial court's finding that appellees' profits did not increase in violation of the Economic Stabilization Act was clearly erroneous. *Id.* at 570. The Temporary Emergency Court of Appeals held that appellants could not complain of lack of specificity in the findings because they failed to apply for an amendment of the findings under Rule 52(b). *Id.*

██ As illustrated by these cases, Rule 52(a) requires a district court that tries an action without a jury to find the facts and to state its conclusions separately concerning the legal issues presented in the complaint or the responsive pleadings. An interpretation of Rule 52 that would require the district court to prepare formal findings of fact and separate conclusions of law on all *motions* would paralyze our overburdened trial courts with one more time-consuming duty. Fortunately our rule makers have wisely and expressly rejected this notion. Rule 52(a) provides that "[f]indings of fact and conclusions of law are *unnecessary* on decisions of motions under Rules 12 or 56 or *any other motion* except as provided in Rule 41(b)." Fed.R. Civ.P. 52(a) (emphasis added). Our reading of the plain meaning of the words used in Rule 52(a) has persuaded us that it is inapplicable to a motion for attorney's fees. The district court did not purport to issue separate findings and conclusions of law on its fee award pursuant to Rule 52. Instead the trial judge prepared an explanation of his reasons that we have concluded is inadequate for appellate review. D'Emanuele had no duty to seek an amendment of the district court's explanation of its award of attorney's fees in order to request that this court require the district court to comply with *Hensley* and the law of the circuit.

## B. Failure to Conduct a Hearing

██ D'Emanuele contends that he was denied due process because the district court did not hold a hearing on the issues raised in the motion for attorney's fees. D'Emanuele does not indicate whether he sought an evidentiary hearing or merely

the opportunity to present oral argument. His reply brief suggests that his claim of error is based on the failure to permit him the opportunity to present oral argument. Appellant's Reply Brief at 14.

In *Moore*, we stated that an evidentiary hearing may be unnecessary where the affidavits and briefs submitted by the parties are sufficiently detailed to provide a basis for the fee award. *Moore*, 682 F.2d at 838. D'Emanuele submitted a number of affidavits in support of his motion for attorney's fees. D'Emanuele does not argue that he was denied the opportunity to present any relevant evidence.

To the extent D'Emanuele is challenging the district court's decision to dispense with oral argument, his claim is without merit. Rule 83 authorizes the district courts to adopt local rules that are not inconsistent with the Federal Rules of Civil Procedure. Fed.R.Civ.P. 83. Local Rule 7.11 of the Central District of California provides that "[t]he Court may dispense with oral argument on any motion except where an oral hearing is required by statute, the F.R. Civ.P. or these Local Rules." D'Emanuele has not referred us to any statute, nor to a federal or local rule that requires oral argument on a motion for attorney's fees. Our research has not disclosed any.

D'Emanuele has also failed to demonstrate that he was prejudiced by the district court's failure to allow him to present oral argument. D'Emanuele merely stated that he "deserved a chance to explore the basis on which the Court intended to rule" and he was denied "a clear record on appeal." D'Emanuele has not explained what additional contentions he intended to present at oral argument that were not contained in his points and authorities filed in opposition for attorney's fees. The district court did not abuse its discretion in submitting the question of the reasonableness of the fee without oral argument.

C. Fees for the Appeal

■■■ Both Montgomery Ward and counsel for D'Emanuele seek fees for work performed on appeal. An award of attorney's fees for work performed on an ERISA appeal is within the discretion of this court pursuant to 29 U.S.C. § 1132(g)(1). *Kim*, 871 F.2d at 1435; *Smith v. Retirement Fund Trust of The Plumbing, Heating & Piping Industry*, 857 F.2d 587, 592 (9th Cir.1988).

Because we must vacate and remand this matter to the district court for a clear and concise statement of the reasons for its fee award, we will defer an award of attorney's fees for this appeal until the district court has completed its task.

### CONCLUSION

The attorney's fee award is vacated. Upon remand, the district court is directed to prepare a clear and concise explanation of the reasons for the selection of the number of hours expended by counsel, the basis for the selection of the hourly award of $145, whether it rejected an award for research, for the preparation of the RICO claims and the motion for attorney's fees, for work performed by associate counsel as well as legal assistants, and if the lodestar was reduced, the specific grounds for doing so. The parties shall bear their own costs on this appeal.

VACATED AND REMANDED.

WALLACE, Circuit Judge, dissenting:

I respectfully dissent. In my view, we are required to affirm the judgment of the district court because D'Emanuele failed to make a motion for more specific findings pursuant to Fed.R.Civ.P. 52(b). Rule 52(b) provides that *"[u]pon motion of a party* made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend its judgment accordingly." Fed.R.Civ.P. 52(b) (emphasis added). By its terms, rule 52(b) suggests that an appealing party such as D'Emanuele who complains about the lack of specificity in the district court's findings must move the district court to make more specific findings.

This case presents a paradigmatic example of the circumstances to which rule 52(b) was designed to apply. Rather than go to trial, D'Emanuele and Montgomery Ward settled the bulk of their dispute out of court. The only matter not covered by the settlement agreement was the amount of

attorney's fees D'Emanuele would receive, and, therefore, this was the only issue left to be resolved by the district court.

D'Emanuele filed an application for attorney's fees and the district court rendered its decision. D'Emanuele believed the factual findings made by the district court were not specific enough, but he did not move the district court to make more specific findings pursuant to rule 52(b); rather, he appealed to this court. The majority now holds that we must remand to the district court for more specific findings. I disagree with the majority's holding because it adds to the list of our duties the unnecessary and time-consuming task of initially reviewing a district court's attorney's fee determination to see if it is specific enough. Under rule 52, specificity challenges should first be raised in the district court.

As the majority makes clear, a district court is bound under the relevant cases to provide a "concise but clear explanation of its reasons for the [attorney's] fee award." Maj. op. at 1384. Yet we should not lose sight of the fact that such an explanation will necessarily be made up of factual findings. In situations similar to the one presented in this case, we have held that a lack of specificity in the district court's findings is not a sufficient ground for reversal if the appealing party has failed to call for more specific findings. In *Reliance Finance Corp. v. Miller*, 557 F.2d 674, 681 (9th Cir.1977), for example, we refused to reverse the district court due to the "lack of specificity of the [district] court's findings." We reasoned that since "[a]ppellants did not propose additional or alternate findings nor did they apply to the district court for an amendment of its findings under Rule 52(b)," they were " 'not in the best of positions to complain that the findings made and conclusions stated are incomplete.' " *Id.* at 681–82, *quoting Sonken–Galamba Corp. v. Atchison, Topeka & Santa Fe Railroad*, 34 F.Supp. 15, 16 (W.D.Mo.1940), *aff'd*, 124 F.2d 952 (8th Cir.), *cert. denied*, 315 U.S. 822, 62 S.Ct. 917, 86 L.Ed. 1218 (1942); *see also Kennedy v. United States*, 115 F.2d 624, 625 (9th Cir.1940) (rejecting petitioner's at-

tempt to have evidence certified where it was "not shown that [petitioner] ever applied to the district court, much less that it applied within ten days of the entry of judgment for the amendment of its findings under Rule 52(b)"); *Evans v. Suntreat Growers & Shippers, Inc.*, 531 F.2d 568, 570 (Temp. Emer. Ct.App.1976) (*Evans*) (where "[a]ppellants did not propose additional or alternate findings nor did they apply to the district court for an amendment of its findings under Rule 52(b) ... they cannot complain of lack of specificity of the findings"); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2581 (1971); *cf. Andersen v. Cumming*, 827 F.2d 1303, 1305 (9th Cir.1987) ("*The appealing litigant* must ensure that sufficient facts are developed *at trial* to support a challenge on appeal.") (emphasis added).

Although rule 52(b) provides that in a bench proceeding, no motion need be made to preserve "the question of the sufficiency of the evidence," this provision does not extend to challenges to the *specificity* of the district court's findings. *See* Fed.R. Civ.P. 52(b). As we recognized in *Reliance Finance*, although a party's failure to make a rule 52 motion "does not prevent [that party] from attacking a finding which is *erroneous*," the party "*cannot complain of lack of specificity of the findings, when [he] propose[s] nothing to this effect.*" 557 F.2d at 682, *quoting Evans*, 531 F.2d at 570 (emphasis added).

The majority criticizes my position by arguing that rule 52 does not apply to motions for attorney's fees. Maj. op. at 1387 – 1388. Rule 52(a) does indeed state that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." What the majority fails to point out, however, is that this case does not involve a "motion" for attorney's fees pursuant to the federal rules in the same sense as a rule 12 or rule 56 motion. Rather, as the district court specifically observed on page 1 of its order, this case concerned an *application* for attorney's fees pursuant to a settlement agreement. The *only* task of the district court was to determine a reasonable award of attorney's fees for D'Em-

anuele. In accomplishing this task, the district court was required by the case law to make findings. The text of rule 52 applies generically to "actions" of the district court in which findings are made. *See* Fed.R.Civ.P. 52(b). An application for attorney's fees, particularly where it is the only matter the court is addressing, would seem to qualify as one such "action." Thus, I see no reason to exclude from the strictures of rule 52 findings made in the course of a district court's determination of an attorney's fees application made pursuant to a settlement agreement. As I point out above, the case law certainly does not require such an exclusion and, in fact, strongly suggests that a rule 52 motion be made in these circumstances. Therefore, I see no basis for the majority's argument that, as a threshold matter, rule 52 does not apply to this case.

Applying rule 52 in this case makes profound sense as a matter of judicial policy. In the Advisory Committee Notes to rule 52, the Committee observed that it is primarily the district court's function to make findings and that it is a waste of judicial resources for the appellate courts constantly to be reviewing the adequacy of these findings. *See* Advisory Committee Notes to Fed.R.Civ.P. 52(a). The Committee recognized that, in the interests of "stability and judicial economy, ... the trial court, not the appellate tribunal, should be the finder of the facts." *Id.* It follows that challenges to the specificity of the district court's factual findings should be dealt with as much as possible at the trial court level. Rule 52(b) is the device for ensuring that this will occur.

The judicial system has become overburdened with fee litigation cases. The majority's refusal to apply rule 52 in this case does nothing to lighten that burden. Indeed, it adds to it. Requiring a rule 52 motion in this context would spare the judicial system the cumbersome and wasteful task of having to remand for more specific findings when a simple post-trial motion would bring it to the attention of the district court where corrective action can occur immediately.

We do not reach the merits in this appeal. Our decision is the functional equivalent of a rule 52 motion: it alerts the district court that its findings are insufficient. But at what price: time is wasted, scarce judicial resources are spent, and *more* attorney's fees are incurred. Montgomery Ward will pay its own. I suppose D'Emanuele will eventually request attorney's fees for this appeal—in spite of the fact that a simple rule 52 motion might have promptly, efficiently, and inexpensively solved the problem.

In my view, D'Emanuele's failure to make a rule 52(b) motion in the district court precludes him from challenging the specificity of the district court's findings. I would therefore affirm the district court's decision.