**MOTION PICTURE INDUSTRY PENSION PLAN, et. al.,**
**Plaintiffs,**

v.

**The KLAGES GROUP, INC., Defendant.**

**No. CV–88–2347–RSWL (Kx).**

United States District Court,
C.D. California.

Feb. 21, 1991.

**1083**

Julius Reich and J. David Sackman, Members of Reich, Adell & Crost, A Professional Law Corp., Los Angeles, Cal., for plaintiffs.

Mitchell S. Shapiro, Julie J. Bisceglia, Shapiro, Posell & Close, A Professional Corp., Los Angeles, Cal., for defendant.

## ORDER

LEW, District Judge.

Motion Picture Industry Pension Plan, et. al. ("Plaintiffs") in the above captioned action have moved for Judgment upon the Master's Decision and attorney's fees. The Klages Group, Inc. ("Defendant") timely filed opposition. In addition, Defendant in the above captioned action has moved for an order granting summary judgment and attorney's fees. Plaintiffs timely opposed that motion. Both matters were set for oral argument on January 14, 1991 at 9:00 a.m. After a review of the papers filed, the Court determined that all of the issues had been adequately briefed and removed

the matters from the Court's law and motion calendar pursuant to Fed.R.Civ.P. 78. Now having again reviewed all of the papers filed in support of and in opposition to the motions, the Court hereby issues the following order:

Plaintiffs' Motion is GRANTED in part and DENIED in part. Defendant's Motion is GRANTED in part and DENIED in part.

The Court finds in favor of Plaintiffs and pursuant to 29 U.S.C. § 1132(g)(2)(A), awards Plaintiffs $31,448.46 for undercontributions for 12,437.2 hours. Pursuant to subsection (B), the Court awards interest on this amount as set forth in the Trust Agreements. Pursuant to subsection (C), the Court awards damages in an amount to be determined by reference to this Order, the Trust Agreements and § 1132. Pursuant to subsection (D), the Court awards Plaintiffs $34,191.93 in attorney's fees and $6,008.08 in costs. Pursuant to subsection (E), the Court awards Plaintiffs $5,987.50 for audit costs.

The Court directs Plaintiffs to prepare a judgment reflecting the amounts awarded under each subsection as set forth in this Order, to be approved as to form and content by the Defendant. The amounts shall be calculated as of the date of this Order.

## A. BACKGROUND

This is an action by several employee benefit plans ("Plaintiffs") to collect delinquent contributions from an employer, Klages Group ("Employer"). The Employer was to contribute at set rates for each hour of work covered by its collective bargaining agreement. Although the Employer sent regular reports and contributions, an audit revealed that the Employer had not made all of the contributions required. Plaintiffs initiated this claim on April 27, 1988, seeking $116,126.50 in delinquent contributions.

The matter was referred to Master Orison S. Marden to determine, *inter alia*, the number of underreported hours during the audit period. The Master issued the first Special Master's Report on July 11, 1990, followed by a second Special Master's Report ("Supplemental Report") on October 9, 1990. Although these Reports did not explicitly state the total hours found to be underreported, they made findings as to certain underreported and overreported hours and set forth guidelines for interpreting the bargaining agreement in order to determine which employees and what type of work was covered.

On December 7, 1990, the parties filed a joint stipulation to the calculation of underreported and overreported hours based on the Master's decisions. The parties however were not able to agree on whether Defendant was entitled to any credit for contributions made for overreported hours against contributions due for the underreported hours. Plaintiffs claim that Defendant is not entitled to any credit for overcontributions and that Defendant owes contributions of $62,739.38 for 24,741.9 underreported hours. Defendant claims that it is entitled to a credit for overcontributions and only owes contributions of $31,448.46 for 12,437.2 underreported hours.

## B. MOTIONS

1. *Plaintiffs' Motion*: for Judgment, Objections to Master's Report and Request for Attorney's Fees

In essence, Plaintiffs accept the Master's Decisions and request judgment based on those findings. Plaintiffs however object to that portion of the Supplemental Report that attempts to allow Defendant credit for overcontributions, arguing that it is a question of law to be resolved by this Court, not by the Master.

Plaintiffs further state that pursuant to 29 U.S.C. § 1132(g)(2) any judgment for delinquent contributions *must* include interest ($35,637.46), liquidated damages ($8,656.58), audit fees ($5,987.50), attorney's fees ($102,575.80) and costs ($6,008.08). Plaintiffs now seek a total of $221,604.80.

2. *Defendant's Motion*: for Summary Judgment and Request for Attorney's Fees

Defendant moves for summary judgment seeking a finalization of an award of $31,448.46 to Plaintiffs for delinquent contributions, based on the Master's Decisions.

Defendant objects to the $62,739.38 amount sought by Plaintiffs for delinquent contributions because Defendant claims it is entitled to a credit for overpayments. Defendant also objects to Plaintiffs' request for attorney's fees and seeks its own attorney's fees and costs in the amount of $63,956.36, as the prevailing party.

## C. DISCUSSION

There are two basic issues raised by the two Motions; (1) whether Employer may claim a credit for alleged overcontributions and thereby reduce the amount to be paid to Plaintiff for delinquent contributions from $62,739.38 to $31,448.46, and (2) whether either party is entitled to attorney's fees, and if so, in what amount.

### 1. *Credit for Overcontributions By Defendant*

█ This case deals with the very narrow issue of whether, as the result of an accounting by a Special Master in an action to collect unpaid contributions, Defendant may offset amounts overpaid against delinquent amounts due.

Plaintiffs do not dispute that an overpayment by Defendant exists. Rather, Plaintiffs argue that Defendant is not entitled to offset overcontributions against undercontributions. Plaintiffs contend that 29 U.S.C. § 1103(c)(2)(A) applies to credits as well as to refunds and that a return of contributions, whether through a separate action or as an offset, is only permitted where the conditions specified in section 403(c)(2)(A) are met. Plaintiffs argue that these conditions have not been met.

In opposition, Defendant argues that it is entitled to a credit for overpayment. Defendant contends that § 1103(c)(2)(A) only applies to refunds. Defendant argues that it is seeking an offset against amounts owed as the result of an overall accounting, rather than an affirmative recovery or "refund" of overpayments. Thus, Defendant argues that § 1103(c)(2)(A) is inapplicable and the conditions do not have to be met.

ERISA § 403(c)(2), 29 U.S.C. § 1103, is an exception to the general rule prohibiting plan assets from inuring to the benefit of employers. The provision prohibits the return of employer contributions except under certain circumstances. The Ninth Circuit has concluded that Congress intended to permit trustees to *refund* improperly paid contributions only where the conditions specified in § 403(c)(2)(A) of ERISA are met. *Award Service, Inc. v. N. Cal. Retail Clerks Unions,* 763 F.2d 1066, 1070 (9th Cir.1985) (emphasis added).

Plaintiffs cite no controlling authority for the proposition that § 403(c)(2)(A) applies equally to refunds and credits. The Court notes that the statutory language specifically prohibits "the *return* of such contribution or payment." No such "return" is sought by Defendant. The Court finds that the offset sought by Defendant in this case is distinguishable from refunds or offsets against future contributions sought in other cases. In this case, the stability of the fund is not a concern because the amount in question is relatively small and no money is required to be paid out by Plaintiffs.

In the absence of any controlling authority, the Court finds that § 1103(c)(2)(A) does not apply to offsets and does not bar Defendant's offset for overcontributions against delinquent contributions owed to Plaintiffs.[1] Therefore, based on the Special Master's Decisions and the parties' stipulation, the Court finds that Defendant owes Plaintiffs $31,448.46 for undercontributions for 12,437.2 hours.

### 2. *Damages, Attorney's Fees and Costs*

█ Plaintiffs state that the damages to be awarded in an action to collect delinquent contributions are set forth in ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2). Plaintiffs argue that because judgment is awarded in their favor, they are entitled to interest, liquidated damages and reasonable attorney's fees, and costs.

---

**1.** Likewise, the Court rejects Plaintiffs' argument that the two year limitation in the Trust Agreement applies equally to refunds and offsets.

Defendant argues that Plaintiffs are not entitled to damages and attorney's fees under § 1132(g)(2) because Plaintiffs are not the "prevailing party." Defendant contends that because the amount awarded to Plaintiffs for delinquent contributions ($31,448.46) is less than the settlement offer rejected by Plaintiffs (and less than the amount sought in the suit), *Defendant* is the "prevailing party" under Local Rule 16.2.5. Thus, Defendant argues that § 1132(g)(2) is not applicable and the Court may not award damages to Plaintiffs. Moreover, Defendant argues that the Court in its discretion may award Defendant attorney's fees and costs under § 1132(g)(1).

29 U.S.C. § 1132(g)(1) states:

In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(2) states:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
    (i) interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

The plain language of § 1132(g)(2) states that the provision applies to situations in which "a judgment in favor of the plan is awarded." The phrase "prevailing party" is not used. The Court rejects Defendant's argument that § 1132(g)(2) does not apply.

The Court finds that because the Court has awarded Plaintiffs $31,448.46 (a judgment in favor of the plan) and because this is an action to enforce § 1145, § 1132(g)(2) is the applicable provision.

The Court finds that Plaintiffs are entitled to all the relief mandated under § 1132(g)(2).

### a. Subsection (A)

Under subsection (A), the Court awards Plaintiffs $31,448.46 in unpaid contributions.

### b. Subsection (B)

Under subsection (B), the Court awards interest to Plaintiffs on the above amount. Defendant does not dispute Plaintiffs' position that the Trust Agreements give the trustees the authority to set the interest rate for delinquent contributions and that the trustees set the rate at 1% per month or 12% per annum.

### c. Subsection (C)

The Court also awards Plaintiffs an appropriate amount under subsection (C). This is an amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages provided for under the plan. Defendant does not dispute Plaintiffs' position that liquidated damages are established in the Trust Agreements, i.e. 10% of the contributions due to the Welfare Funds and Retired Employees Fund, and 20% to the Pension Plan.

### d. Subsection (D)

█ Under subsection (D), Plaintiffs are entitled to reasonable attorney's fees and costs. Plaintiffs argue that attorney's fees are mandated when there is a judgment for delinquent contributions, whether or not all relief sought is awarded. *Operating Engineers Pension Trust v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1355 (9th Cir.1990). Following the Ninth Circuit, the Court finds that because there is a judgment in favor of Plaintiffs, an award of reasonable attorney's fees to Plaintiffs is mandatory. The Court therefore rejects Defendant's ar-

gument that Defendant is the prevailing party and is entitled to attorney's fees and costs under § 1132(g)(1).

[4] The Ninth Circuit has expressly held that the standard for determining the amount of attorney's fees in ERISA cases is the lodestar/multiplier approach. *D'Emanuele v. Montgomery Ward & Co., Inc.,* 904 F.2d 1379, 1383 (9th Cir.1990). "First, the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate [cite omitted]. Second, the court may increase or decrease the lodestar fee based on factors identified by this circuit in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976) [cite omitted], that are not subsumed within the initial calculation of the lodestar [cite omitted]." *Id.* at 1383. "Such upward or downward adjustments are the exception rather than the rule since the lodestar amount is presumed to constitute a reasonable fee." *D'Emanuele,* 904 F.2d at 1383.

### i. *Hours*

Plaintiffs submitted time records (Exh. 501 of Sackman Declaration) showing that from March 25, 1988 to November 11, 1990, the following hours were expended on this case:

517.2 hours — attorney time
22 hours — paralegal (Berry) time
150.3 hours — paralegal (Andreson) time
25 hours — law clerk time
29.8 hours — clerical time

In reviewing Exhibit 501, the Court is satisfied that Plaintiffs expended that number of hours on this case. The Court finds that these hours properly included the hours spent on the Second Claim which was settled.

### ii. *Hourly Rates*

Plaintiffs cite *D'Emanuele* for the proposition that the determination of the hourly rate is not made by reference to the rates actually charged, but rather by reference to the "prevailing market rate in the com-

munity for similar services of lawyers 'of reasonably comparable skill, experience, and reputation'." *D'Emanuele,* 904 F.2d at 1384. Plaintiffs submit a survey of market rates for October 1990 (Exh. 503 to Rotter Declaration) to support their request for the following rates:

| | |
|---|---|
| Attorney | — $169 per hour |
| Paralegal (Berry) | — $ 90 per hour |
| Paralegal (Andreson) | — $ 70 per hour |
| Law clerks | — $ 65 per hour |
| Clerical | — $ 35 per hour |

In Declaration, Plaintiffs state that they actually charged the following hourly rates: [2]

| | |
|---|---|
| Attorney | — $100 (3/88 to 10/88) |
| | — $120 (11/88 to 2/90) |
| | — $135 (3/90 to present) |
| Paralegal (Berry) | — $90 |
| Paralegal (Andreson) | — $65 to $70 |
| Law clerks | — $35 to $70 |
| Clerical | — $35 |

In examining Exhibit 503, the Court notes that the hourly rates requested by Plaintiffs are within the range of rates Plaintiffs actually charged with the exception of hourly rates for attorneys. This lends credence to Plaintiffs' position that the hourly rate requested is the prevailing market rate of lawyers of reasonably comparable skill, experience and reputation.

The Court therefore uses the hourly rates requested by Plaintiffs and finds that the lodestar figure is $102,575.80 (517.2 @ $169 = $87,406.80, 22 @ $90 = 1980.00, 150.3 @ $70 = $10,521.00, 25 @ $65 = 1,625.00, 29.8 @ $35 = 1,043.00).

### iii. *The Kerr Factors*

[5] Although there is a strong presumption that the lodestar figure represents "reasonable" attorney's fees, the figure may be adjusted upward or downward in exceptional cases in consideration of the *Kerr* factors that are not subsumed. *D'Emanuele,* 904 F.2d at 1384. "The Court should discuss only those *Kerr* factors that are relevant to the court's decision; each and every factor need not be discussed." *Id.* at 1386 (cite omitted).

---

2. The Declaration states that the amount actually paid by this client was $76,527.00 in profes-

sional fees through October 1990 and $985.50 in fees accrued to November 15, 1990.

The Court finds that this is an exceptional case justifying a downward adjustment based on the eighth factor, "the amount involved and the results obtained" as set forth in *Kerr*.

The Court notes that as a result of its audit, Plaintiffs sought $116,126.50 for delinquent contributions. Defendant argues that their own audit only revealed $12,500 in unpaid contributions. Defendant points out that in the November 13, 1989 settlement conference, Magistrate Judge Kronenberg stated that Plaintiffs had run up "some ungodly attorney's fees" and that running up $50,000 in attorney's fees on an $80,000 bill was "unconscionable." The Court notes that after the first Special Master's Report, there was an offer of compromise filed by Defendant on July 11, 1990, for an amount greater than the amount now awarded Plaintiffs for unpaid contributions. The Court finds it most disturbing that Plaintiffs incurred over $100,000 in attorney's fees in an attempt to recover approximately $116,000 and rejected many opportunities that would have prevented the accumulation of attorney's fees. As noted above, the actual amount recovered is much less than that sought.

In light of these facts, the Court agrees with Defendant that the lodestar figure should be reduced. Because the amount actually recovered by Plaintiffs for unpaid contributions ($31,448.46) is approximately one-third of the amount sought ($116,126.50), the Court finds it reasonable to award Plaintiffs one-third of the amount sought ($102,575.80) for attorney's fees. Therefore, the Court awards Plaintiffs $34,191.93 for attorney's fees, even though this amount also exceeds the amount of unpaid contributions actually recovered by Plaintiffs.

 In addition, in Declaration Plaintiffs claim $6,008.08 in costs. The Court is satisfied that Exhibit 504 (Rotter Declaration) represents costs actually incurred in this case and awards that amount to Plaintiffs.

e. Subsection (E)

 Under subsection (E), Plaintiffs are entitled to other legal or equitable relief.

Plaintiffs cite *Operating Engineers Pension Trust v. A–C Co.*, 859 F.2d 1336, 1343 (9th Cir.1988) in which the court found that audit costs are recoverable under subsection (E) because such an award is consistent with the policy of encouraging full and fair contributions. Defendant does not dispute Plaintiffs' claim for $5,987.50 for audit costs (239.5 hours @ $25.00 per hour). The Court therefore awards Plaintiffs $5,987.50 for audit costs.

The Court does not address the issue of Defendant's affirmative defenses because Defendant did not argue those defenses in the moving papers.

The Court finds that summary judgment is appropriate because there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

IT IS SO ORDERED.