In re Bobby S. DUTTA, Debtor.

Appeal of MATHENY, POIDMORE & SEARS, Appellant.

BAP No. EC–93–2435–RVRo.
Bankruptcy No. 93–22200–A–11.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted September 22, 1994.

Decided Dec. 7, 1994.

A. Laurel Bennett, Sacramento, CA, for appellant.

Before RUSSELL, VOLINN and ROSS[1], Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

Counsel for a Chapter 11[2] debtor and debtor in possession filed its first and final fee application following successful confirmation of the debtor's plan of reorganization. The bankruptcy court entered an order which awarded fees in an amount less than requested by counsel and costs in full.

Counsel filed a motion for clarification of the bankruptcy court's order. The bankruptcy court denied counsel's motion for clarification. Counsel appeals both of the orders. We VACATE the bankruptcy court's orders and REMAND with instructions.

## I. FACTS

On March 12, 1993, appellant Matheny, Poidmore & Sears, A General Law Partnership ("MPS") filed a Chapter 11 petition on behalf of the debtor, Bobby S. Dutta ("Dutta"). MPS filed its application for employment as Dutta's bankruptcy counsel on March 12, 1993. An order authorizing MPS' employment was entered by the court on March 15, 1993.

Approximately six months later, MPS successfully obtained confirmation of Dutta's

---

1. Honorable Herbert A. Ross, Bankruptcy Judge for the District of Alaska, sitting by designation.

2. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101—1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001—9036.

Chapter 11 plan of reorganization (the "plan"). The bankruptcy court entered its order confirming Dutta's plan on September 13, 1993.

Following confirmation of the plan, MPS filed its first and final fee application (the "fee application"). The fee application requested payment of MPS' attorneys' fees in the amount of $25,046 and expenses in the amount of $655.70. MPS provided written notice of the hearing on the fee application to the Office of the United States Trustee, all creditors and other interested parties. No objections to the fee application were filed with the bankruptcy court.

Pursuant to the direction of the bankruptcy court, the fee application was submitted without a hearing, in accordance with the bankruptcy court's customary practice. On November 10, 1993, the bankruptcy court entered its order awarding fees to MPS in the amount of $18,543.50 (a reduction of $6,502.50) and expenses in full (the "fee award order").

On November 19, 1993, MPS filed its motion for clarification of the fee award order. A hearing on the motion for clarification was held on December 13, 1993. The bankruptcy court denied the motion for clarification and entered a civil minute order on December 13, 1993 (the "motion for clarification order"). MPS timely filed its notice of appeal of both orders.

## II. ISSUES

A. Whether the bankruptcy court abused its discretion when it reduced the amount of fees requested by MPS.

B. Whether the bankruptcy court abused its discretion when it denied MPS' motion for clarification.

3. § 330. **Compensation of officers.**
   (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to ... the debtor's attorney—
   (1) reasonable compensation for actual, necessary services rendered by such ... attorney

## III. STANDARD OF REVIEW

■ Compensation awards to professionals are made under the criteria set forth in § 330(a) and are generally reviewed for an abuse of discretion. *In re Stewart*, 157 B.R. 893, 895 (9th Cir. BAP 1993); *In re Financial Corp. of America*, 114 B.R. 221, 223 (9th Cir. BAP 1990), *aff'd*, 946 F.2d 689 (9th Cir.1991); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir.1985).

The legal standard utilized by a bankruptcy court in establishing compensation, however, involves the construction of § 330(a) and such statutory interpretation is reviewed *de novo*. *In re Stewart*, 157 B.R. at 895; *In re Kitchen Factors, Inc.*, 143 B.R. 560, 562 (9th Cir. BAP 1992); *In re Financial Corp. of America*, 114 B.R. at 223; *In re Nucorp Energy, Inc.*, 764 F.2d at 657.

## IV. DISCUSSION

A. *Reduction of fee award*

1. *Authorization and standards for compensation awards*

■ Section 330(a) authorizes the compensation of a debtor's counsel in a Chapter 11 case.[3] Section 330 is implemented by Bankruptcy Rule 2014(a) as well as by the local rules of practice for the particular bankruptcy court from which approval of compensation is sought. In this case, the Local Rules of Practice for the United States Bankruptcy Court, Eastern District of California, provide, in pertinent part, as follows:

GUIDELINES PERTAINING TO REQUESTS FOR COMPENSATION AND EXPENSE BY PROFESSIONALS IN EASTERN DISTRICT OF CALIFORNIA CASES

Applications for compensation and reimbursement of expenses submitted by attorneys ... must show the following:

... based on the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and
   (2) reimbursement for actual, necessary expenses.

I. The precise/detailed service performed must be described.

II. Time must be reported in tenths of an hour.

The following guidelines identify the billing matters the undersigned judges regard as generally acceptable. They reflect rebuttable presumptions. In all instances, the provisions of 11 U.S.C. §§ 327–331 are controlling.

. . . .

2. Rates allowed will be the prevailing local rates;

U.S.Bankr.Ct.Rules E.D.Cal., Compensation Guidelines ("Compensation Guidelines").

### 2. Dutta's business and MPS' legal services on his behalf

Dutta's business involved the ownership and operation of multiple parcels of real property, most of which were located in Sacramento and Stockton, California. The bankruptcy estate consisted of primarily nine parcels of real property, eight of which were income producing and managed by Dutta. The aggregate value of the real properties totalled approximately $1,030,000 at the time the bankruptcy case was filed.

The properties were subject to thirteen separate deeds of trust securing thirteen promissory notes in favor of numerous institutional and individual lenders. As of the date the petition was filed, Dutta's secured debt totalled approximately $760,000 and other claims against him totalled approximately $120,000.

In its legal representation of Dutta, MPS advised him concerning compliance with the requirements of the Bankruptcy Code and Rules, provided legal advice on his on-going management and operation of his real estate holdings, and provided advice concerning the preparation of monthly operating reports and other requirements of the Office of the United States Trustee. MPS filed applications for the employment of various professionals, motions for orders approving Dutta's living expenses and authorizing returns of tenants' deposits, and motions for approval of professionals' fees.

In connection with its formulation of the plan, MPS negotiated loan modifications with at least six of Dutta's thirteen secured lenders. In this regard, it researched the numerous and substantial legal rights relative to the loans of the thirteen secured lenders and their collateral.

MPS also filed oppositions and reply briefs to motions for relief from the automatic stay concerning certain of Dutta's real properties. One creditor filed objections to virtually all of the motions filed by Dutta in the case; MPS filed oppositions to each of those objections.

MPS negotiated resolutions to all initial objections to the plan, prior to and at the time of the plan confirmation hearing. Prior to reaching compromises relative to such objections to the plan, MPS prepared for plan confirmation pursuant to the Bankruptcy Code's "cramdown" provision.[4] In this regard, it researched and filed an extensive confirmation brief. MPS' brief apparently assisted MPS in negotiating loan re-writes with the final three secured creditors who were objecting to the plan and, in so doing, MPS succeeded in obtaining confirmation of the plan.

Our review of the record in its entirety and of the fee application and its supporting pleadings in particular leads us to the conclusion that: (1) MPS' representation involved factually and legally complicated issues arising from Dutta's numerous real estate holdings; (2) the case was highly adversarial in nature, involving many parties and their counsel; and (3) MPS achieved successful results in the form of a confirmed plan within a very short period of time (approximately six months from the date the bankruptcy case was filed).

### 3. The fee application

MPS filed its fee application on September 24, 1993, together with a supporting memorandum of points and authorities and a declaration of attorney A. Laurel Bennett ("Bennett"), the attorney primarily responsible for Dutta's representation. The fee application provided a narrative description of the legal

---

4. See 11 U.S.C. § 1129(b).

services rendered by MPS on Dutta's behalf, as summarized above, and included a detailed description and listing of the rates charged by other local law firms for similar bankruptcy services (those rates ranged from $85 to $225 per hour, depending on experience).

The memorandum of points and authorities submitted by MPS briefed the issue of "reasonableness" with respect to compensation awards. It specified that Bennett's hourly rate was $175 per hour based on her thirteen years of legal experience in the field of Chapter 11 bankruptcy.[5]

Bennett's declaration provided further specific information concerning the extent, nature and sophistication of her bankruptcy experience. In addition, Bennett's declaration included an attached set of detailed time entries which described the legal services provided by her with specificity and which reflected that her time was reported in tenths of an hour, as required by the local rules of the Eastern District of California. *See* Compensation Guidelines.

### 4. *The fee award order*

The fee award order consisted of a preprinted checklist form of order customarily used by the bankruptcy court. It stated, in relevant part, as follows:

### ORDER RE: REQUEST FOR FEES AND COSTS

The above-entitled motion having been submitted for decision, and after consideration thereof, it is

ORDERED that the aforesaid motion be and the same is hereby

. . . .

X B. Granted in part for $18,543.50 fees and $655.79 costs for the reasons set forth below.

. . . .

The application for fees is deficient in the following areas:

. . . .

X 7. Lumping of services. *In re Chicago Lutheran Hospital Assn.*, 89 B.R. 719, 735–36 (Bankr.N.D.Ill.1988); *In re Werth*, 32 B.R. 442, 450–51 (Bankr.D.Colo.1983).

. . . .

X 9. Excessive phone calls with client/others. *In re Wiedan's [sic], Inc.*, 78 B.R. 904, 908 (Bankr.S.D.Ill.1987); *In re Wildman*, 72 B.R. 700, 726 (Bankr. N.D.Ill.1987).

. . . .

X 11. Excessive time spent on task. *In re C & J Oil Co., Inc.*, 81 B.R. 398, 403–04 (Bankr.W.D.Va.1987).

X 12. Duplication of services. *In re Tom Carter Enterprises, Inc.*, 55 B.R. 548, 552 (Bankr.C.D.Cal.1985); *Pacific Express*, 56 B.R. at 863–64.

. . . .

X 14. Necessity for service. 11 U.S.C. sec. 330(a)(1).

X 15. Hourly rate improper.

a. X Rate is in excess of prevailing local rates. *Pacific Express*, 56 B.R. at 864–65.

■ MPS complains that the fee award order fails to contain an adequate explanation of the reasons for the bankruptcy court's reduction of the requested fees and that the "findings" contained in that order (i.e., the checklist format) are too general in nature for MPS or any reviewing court to determine the rationale for the bankruptcy court's decision to reduce MPS' fees.

MPS is particularly concerned about the bankruptcy court's finding that MPS' hourly rate is in excess of local prevailing rates, since the fee award order refers to *In re Pacific Express, Inc.*, 56 B.R. 859 (Bankr. E.D.Cal.1985) regarding the prevailing local rate, and fails to state what rate was utilized by the bankruptcy court in determining the fee award. MPS notes that *Pacific Express* contains a finding that the hourly rates charged by bankruptcy specialists in the Sacramento area in 1985, almost *ten* years ago, were between $100 to $150 per hour. *Id.* at 864–65 (emphasis added).

That application was approved by an order entered on March 15, 1993.

---

5. Bennett's rate of $175 per hour was also specified in MPS' application for an order authorizing the debtor in possession to employ counsel.

MPS also argues that, due to the lack of factual explanation of the other alleged deficiencies in its fee application, MPS lacks the information necessary to determine what portions of its conduct were inappropriate, and will therefore be unable to prevent such inappropriate conduct in future bankruptcy cases.

While emphasizing that attorneys' fee awards are left to the discretion of trial courts because they involve essentially factual matters, the Supreme Court has nevertheless mandated that a trial court must provide a "concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (discussing 42 U.S.C. § 1988). *See also D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1384 (9th Cir.1990) (discussing 29 U.S.C. § 1132(g)).

■ While a trial court need not necessarily explain its analysis in terms of elaborate mathematical calculations, for example, it must provide sufficient insight into its exercise of discretion to allow an appellate court to exercise its reviewing function. In the absence of such a sufficient explanation, the fee award must be remanded to provide such an explanation. *D'Emanuele*, 904 F.2d at 1385 (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir.1988), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990)).

We agree that the fee award order fails to provide a sufficiently clear explanation of the bankruptcy court's reasons for its reduction of MPS' requested fees. Since the lack of explanation of certain of the deficiencies specified by the bankruptcy court are of particular concern not only to MPS but to all other local bankruptcy counsel, we address below each category marked as "deficient" in the fee award order.

a. *Hourly rate improper; rate is in excess of prevailing local rates.*

MPS is understandably concerned to learn what rate the bankruptcy court *presently* deems to be the prevailing local rate, so that it can determine what rate it should be charging its clients now and what rate it should charge its clients in future cases.

MPS provided the bankruptcy court with detailed information of the range of rates charged at the present time by numerous other local counsel. Bennett advised the bankruptcy court that her hourly rate of $175 is the same customary fee that she has charged her bankruptcy clients for approximately eight years, and that her rate has been approved in numerous bankruptcy cases in the Eastern District of California and has not previously been disapproved in any bankruptcy cases in that district. MPS further notes that neither the bankruptcy court (other than in *Pacific Express*) nor the Office of the United States Trustee has defined the current prevailing local hourly rate applicable to bankruptcy cases in the Eastern District of California.

Specification of the appropriate current prevailing local rate for legal services rendered in bankruptcy cases is of obvious critical importance not only to MPS but to all local counsel who practice before the bankruptcy court for the Eastern District of California. To the extent that the *Pacific Express* case constitutes the basis for the bankruptcy court's definition of the prevailing local rate, we find that definition to be outmoded due to the passage of time. In the absence of a more current definition, we agree that it is impossible for MPS to determine what rate is presently appropriate, as well as what rate would exceed the prevailing local rate.

b. *Lumping of services.*

The bankruptcy court's assessment that the time entries submitted by MPS in support of the fee application demonstrate a severe "lumping" problem is correct, despite the absence of a factual explanation of such by the bankruptcy court. The following two examples of MPS' time entries illustrate the problem.

9/03/93 ALB  Telephone conference with client re preparation for confirmation hearing, declarations needed, evidence and analysis of cash flow, etc.; telephone conference with Tom Isaac re final stipulation re plan, hearing on confirmation, etc.; telephone conference with Jan Rosetti re tax verification letter.                                    3.40

Research re cramdown provisions re San Francisco Federal, Great Western and World Savings, prepared tabulation of ballots and declaration re same and analysis of same. 4.50

Each of the above entries should have been separated into three separate entries, for a total of six entries, with the appropriate time for each task allocated accordingly. A substantial amount of MPS' time entries are replete with obvious "lumping" problems. By our count, at least 39 of its time entries clearly present this deficiency. Under the circumstances, no further specification of this deficiency was required by the bankruptcy court. However, upon remand, the bankruptcy court should indicate what portion of the fee reduction was due to this deficiency.

c. *Excessive phone calls with client/others.*

The bankruptcy court provided no factual explanation of this purported deficiency. Our review of the record in its entirety and the fee application and its supporting documentation in particular fails to reveal an excessive amount of telephone calls to Dutta or others.

d. *Excessive time spent on task.*

This purported deficiency is more problematic. Given the extent of the "lumping of services" problem described above, it is understandable that the time expended on certain tasks may have appeared excessive to the bankruptcy court. Nevertheless, since any "excessive" time entries appear far fewer in number than the "lumped" time entries, the court should have specified the particular tasks on which excessive time appeared to have been spent.

e. *Duplication of services.*

The fee application requests fees for legal services rendered by only one attorney (Bennett). Our review of the record does not reveal any noticeable instances in which she performed duplicative services.

f. *Necessity for service.*

Again, our review of the record does not reveal any particular examples of unnecessary services. All of the legal services rendered by MPS appear to have been appropriate in order to enable Dutta to comply with the requirements of the Bankruptcy Code and the Office of the United States Trustee and to guide him throughout his bankruptcy case to the confirmation of his plan.

B. *The motion for clarification order*

Following entry of the fee award order, MPS filed its motion for clarification. A hearing was held on December 13, 1993. The bankruptcy court denied the motion, and entered the motion for clarification order on the same day. MPS appeals from this order as well. The motion for clarification order failed to contain any explanation whatsoever of the basis of the bankruptcy court's decision to deny the motion.

Federal Rule of Civil Procedure 52(a), as implemented by Federal Rule of Bankruptcy Procedure 7052, provides that "(f)indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." The Ninth Circuit has held that Rule 52(a) is inapplicable to a disposition of a motion concerning attorneys' fees. *D'Emanuele,* 904 F.2d at 1388. This does not, however, obviate the Supreme Court's mandate that a clear and concise explanation is required of a trial court's reasoning regarding fee awards. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. MPS' motion for clarification was well taken given the lack of specificity in the fee award order. The motion for clarification order failed to provide any additional explanation of the bankruptcy court's reasoning.

V. CONCLUSION

Without a more detailed explanation of the reasoning underlying the reduction of MPS' fee award, the manner in which the bankruptcy court exercised its discretion cannot be determined. Accordingly, we VACATE both of the bankruptcy court's orders and REMAND the matter for the bankruptcy court to provide a more detailed factual ex-

planation for the reduction of MPS' fees, consistent with the above discussion.[6]

---

**6.** The request by MPS for an award of its attorneys' fees and costs for prosecuting this appeal is ordered denied.