

# FILED

NOV 27 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1092-SFL |
| MORDECHAI ORIAN and YUN RU, | Bk. No. 9:16-bk-10514-DS |
| Debtors. | |
| MORDECHAI ORIAN; YUN RU, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| MORDEHAI ASAF; LIORA ASAF, | |
| Appellees. | |

Argued and Submitted on October 25, 2018
at Pasadena, California

Filed – November 27, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

———————

Appearances:    William Charles Beall of Beall & Burkhardt argued for appellants; Michael N. Sofris of Action Legal Team argued for appellees.

———————

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.


**INTRODUCTION**

This is an appeal from an order awarding damages under § 362(k).[1] The damages award consists only of attorney's fees the debtors incurred as a result of the willful stay violation of appellees Mordehai and Liora Asaf. The Asafs failed to promptly dismiss a lawsuit in Hawaii state court (the "Hawaii Action") once they discovered that they had filed the case in violation of the stay. The bankruptcy court disallowed over half of the $11,322.50 in fees debtors requested and their $77.60 in expenses, stating only that the disallowed fees and costs were "unreasonable, excessive, or did not result from the violation." The bankruptcy court also denied the debtors' request for punitive damages.

On appeal, the debtors challenge the disallowance of their fees and

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

expenses. While the entirety of the record suggests why the bankruptcy court disallowed some of these fees, it does not enable us to fully understand or meaningfully review the balance of the disallowed fees. Because we simply cannot tell why the bankruptcy court found certain fees not allowable, we must VACATE and REMAND for further findings.

The debtors also challenge the bankruptcy court's denial of punitive damages. They do not dispute the bankruptcy court's statement of the legal standard for awarding punitive damages under § 362(k). Rather, they only challenge the bankruptcy court's finding that the debtors did not prove a reckless or callous disregard for the law or the debtors' rights necessary for punitive damages. Because this finding was not clearly erroneous, we AFFIRM the denial of punitive damages.

## FACTS

### A. The Debtors' Bankruptcy Filing And The Commencement Of The Hawaii Action.

The debtors commenced their bankruptcy case by filing a voluntary chapter 11 petition in March 2016. The case was converted to chapter 7 in September 2016. Neither the mailing matrix nor the schedules of creditors listed the Asafs.

Without knowledge of the bankruptcy filing, the Asafs filed the Hawaii Action against the debtors in the Third Circuit Court for the State of Hawaii in April 2016. The complaint sought partition, an equitable lien and

3

damages regarding a parcel of agricultural property located in Captain Cook, Hawaii. The Asafs served the summons and complaint on the debtors in June 2016. Shortly after being served, the debtors filed a notice of bankruptcy filing and automatic stay in the Hawaii Action. In July 2016, the state court entered an order holding the Hawaii Action in abeyance "pending the outcome of the bankruptcy case." The Asafs took no further action in the Hawaii Action after entry of that order.

## B.     The Relief From Stay Proceedings.

Roughly fourteen months later, in September 2017, the Asafs filed a motion for relief from stay in the bankruptcy court seeking to resume the Hawaii Action. Among other relief requested, the Asafs asked the bankruptcy court to annul the stay with respect to the commencement of the Hawaii Action. The Asafs asserted that annulment was appropriate because the debtors had commenced their bankruptcy case in bad faith and without listing the Asafs as one of their creditors. The Asafs conceded that they commenced the Hawaii Action postpetition, but they insisted that they were unaware of the bankruptcy filing at that time.

The debtors opposed the relief from stay motion. They pointed out that there was no dispute that the Hawaii Action was commenced in violation of the stay, that the action was void, and that the Asafs learned of the bankruptcy case shortly after the Hawaii Action was commenced. They further noted that, in spite of their obligation to promptly remedy their stay

4

violation, the Asafs waited well over a year to seek annulment of the stay. The debtors also disputed that their bankruptcy case was filed in bad faith. As the debtors put it, they could not have filed bankruptcy to impede the Hawaii Action because the bankruptcy was filed before the Hawaii Action even existed.

On November 7, 2017, the bankruptcy court held a hearing on the Asafs' relief from stay motion. The bankruptcy court stated several times that the filing of the Hawaii Action violated the stay and was void. It specifically considered and rejected the Asafs' request for stay annulment, holding that the Asafs had not factually established the requisite "balance of equities" for such relief. The court also denied the Asafs' request for mandatory abstention. As the bankruptcy court explained, the state court action that was the subject of the Asafs' abstention request was filed in violation of the stay and was void.

During the hearing, the debtors announced their intent to seek contempt sanctions for the continuing stay violation if the Hawaii Action was not dismissed. In response, the Asafs claimed that they were powerless to dismiss the Hawaii Action because it was stayed. The bankruptcy court did not comment on this issue.

On November 7, 2017, the bankruptcy court entered its order denying the relief from stay motion. The Asafs did not appeal.

5

## C. The Show Cause Proceedings.

### 1. The Motion For An Order To Show Cause.

On November 17, 2017, the debtors filed their ex parte motion seeking an order to show cause why the Asafs should not be held in contempt in light of their continuing violation of the stay. Even though the motion was framed as one to show cause regarding contempt, it sought relief under § 362(k). More specifically, the motion requested actual damages under § 362(k) in the form of attorney's fees and costs and also requested punitive damages, citing the statutory language and case law decided under that statute.[2]

In his declaration in support of the motion, debtors' counsel noted the debtors' demands for the dismissal of the void Hawaii Action made during the relief from stay proceedings. Following the conclusion of the relief from stay proceedings, counsel stated that he exchanged emails with the Asafs' California counsel and reiterated his demand for dismissal of the Hawaii Action. According to the debtors' counsel, the Asafs responded by asserting that the debtors had no standing to enforce the automatic stay. The debtors' counsel replied by pointing out that *Eskanos & Adler, P.C. v.*

---

[2] What now is designated as § 362(k) formerly was designated as § 362(h), until Congress amended the statute in 2005 as part of its Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23 ("BAPCPA"). Thus, case law decided before the enactment of BAPCPA identifies the relevant statutory provision as § 362(h). *See Hunsaker v. United States*, 902 F.3d 963, 966 n.1 (9th Cir. 2018).

*Leetien*, 309 F.3d 1210 (9th Cir. 2002), was inconsistent with the Asafs' standing argument. But there was no further response to the debtors' demand for dismissal.

The Asafs opposed the debtors' motion.  As an initial matter, the Asafs challenged the debtors' right to seek ex parte relief. They also maintained that the debtors could not recover any attorney's fees as § 362(k) damages because the debtors incurred them in the process of enforcing the automatic stay.  In support of their argument, the Asafs cited *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010), which the Ninth Circuit had overruled in *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1098-1101 (9th Cir. 2015) (en banc).

On December 5, 2017, the bankruptcy court issued its order to show cause why the Asafs should not be held in contempt ("OSC"). The OSC further raised the issue of whether the Asafs should be held liable for punitive damages and for the debtors' attorney's fees and costs incurred in defending against the relief from stay motion and in bringing their motion.

The Asafs dismissed the Hawaii Action on December 8, 2017, but they only did so after the debtors filed their § 362(k) motion and after the court issued its December 5, 2017 OSC.

### 2.     The Show Cause Proceedings After Issuance Of The OSC.

On December 26, 2017, the Asafs responded to the OSC. They noted their dismissal of the Hawaii Action on December 8, 2017. They also argued

that their actions were merely an attempt to perfect or maintain a prepetition lien and were excepted from the automatic stay under § 362(b)(3). They denied that their actions willfully violated the stay and also reiterated the attorney's fees argument they made in their initial response to the debtors' motion, again relying upon the overruled Ninth Circuit decision, *Sternberg v. Johnston*. The Asafs also argued that their effort to annul the stay in the relief from stay motion was not itself a violation of the stay, and any fees incurred by the debtors related to that motion could not be recovered as damages under § 362(k).

On January 2, 2018, the debtors replied to the Asafs' OSC response. The debtors first pointed out that the bankruptcy court previously determined that the Hawaii Action was filed in violation of the stay. The debtors further challenged the Asafs' argument contending that the Hawaii Action was well beyond the scope of the exception to the automatic stay provided for in § 362(b)(3) to perfect, or maintain, a lien. Additionally, the debtors reiterated that the Asafs' stay violation had been willful because the Asafs knew in June 2016 that the Hawaii Action had been filed postpetition and they failed to remedy their stay violation for roughly the next 18 months. This failure continued even after the bankruptcy court ruled in November 2017 that the Hawaii Action was void and the debtors had demanded dismissal of the Hawaii Action. Finally, the debtors argued that the Asafs' construction of *Leetien* and reliance on *Sternberg v. Johnston*

8

bolstered the request for punitive damages. The debtors maintained that the Asafs' arguments were specious and were made to unduly increase the costs of litigation.

### 3. The First Show Cause Hearing.

In January 2018, the matter was reset for hearing several times in large part because of mudslides that occurred in the Santa Barbara area. At this same time, the matter was reassigned to a new bankruptcy judge. In light of the reassignment, the debtors ordered and submitted the transcript from the relief from stay hearing to facilitate the newly-assigned bankruptcy judge's understanding of the prior rulings with respect to the Hawaii Action and the automatic stay.

On February 1, 2018, the bankruptcy court held its initial hearing on the OSC. At the outset of the hearing, the bankruptcy court granted the debtors' request that it take judicial notice of the relief from stay hearing transcript. The court further stated that Judge Carroll's findings made at that hearing should be treated as the court's findings "by everyone" at the OSC hearing. The court additionally noted that Judge Carroll clearly found that the Hawaii Action was filed in violation of the stay. The court identified the following issues as questions that needed to be resolved: (1) when (if ever) did the stay violation become willful; (2) when did the Asafs comply with their duty to remedy the stay violation; and (3) assuming they

did not timely comply, what are the damages.[3]

The debtors acknowledged that their only actual damages consisted of attorney's fees to address the stay violation. As for punitive damages, the debtors claimed that the specious arguments made by the Asafs, first to support their refusal to dismiss the Hawaii Action and later to defend against the OSC proceedings, evidenced the Asafs' bad faith and justified a punitive damages award.

In response to the debtors' comments, the Asafs in essence contended that there was no proof that the debtors asked the Asafs' *Hawaii* counsel to dismiss the case or that it was legally possible under Hawaii law to immediately dismiss the Hawaii Action upon demand. The Asafs next reiterated their argument that, so long as the Hawaii Action was stayed, they had no affirmative obligation to remedy the stay violation by dismissing the void Hawaii Action.

The court then ruled that the Asafs willfully violated the automatic stay. According to the court, the mere continued existence of the Hawaii Action was not a willful stay violation because the Hawaii Action was

---

[3] Later on at the same hearing, the bankruptcy court revisited the relief from stay findings after the Asafs questioned whether Judge Carroll ever found that there was a stay violation. In response, the bankruptcy court noted: "I think it's clear Judge Carroll at the time of the relief from stay motion hearing did find that action was filed in violation of the stay."

being held in abeyance by order of the Hawaii circuit court.[4] However, the court explained that the Asafs' filing of the relief from stay motion was evidence that the Asafs were willfully violating the automatic stay by pursuing the action. Still, the bankruptcy court ruled that punitive damages were not justified. As the bankruptcy court explained, punitive damages under § 362(k) required a showing of reckless or callous disregard for the law or the rights of others. According to the court, in its view, the record presented did not support a finding of reckless or callous disregard. The court concluded that the debtors were entitled to recover their fees incurred in defending against the relief from stay motion and set the matter for the debtors to prove up their fees and costs on March 13, 2018.

### 4. The First Order On The Asafs' Willful Stay Violation.

Shortly after the first hearing on the OSC, the debtors lodged a proposed form of order. The proposed form of order incorporated by reference the reasoning of the court given at the February 1, 2018 hearing as its findings of fact and conclusions of law. The Asafs then filed an objection

---

[4] At the final hearing on the OSC, held on March 13, 2108, the bankruptcy court modified its finding regarding how and when the willful stay violation occurred:

> The real issue is that there were a series of findings already made by the Court, by Judge Carroll, regarding the Hawaii action being a violation of the stay, and, as I found at the last hearing, **the failure to dismiss that action was evidence that the violation of the stay had become willful**.

Hrg. Tr. (March 13, 2018) at 4:11-13.

to the proposed form of order. The Asafs complained that it was impossible to tell if the court meant this order to be its final act for appeal purposes. The Asafs further objected that the proposed order contained none of the oral findings of fact, conclusions of law, and rulings the court made at the February 1, 2018 hearing. The Asafs insisted that the bankruptcy court's oral finding that they willfully violated the stay by filing the relief from stay motion was novel. They urged the court to memorialize this finding in writing, for appeal purposes.

The debtors filed a short reply in support of the proposed form of order. The debtors maintained that, by way of its oral findings and conclusions, the court really meant the following:

> As the undersigned heard the Court, the filing of a complaint in Hawaii after the filing of the petition was the stay violation. The Asafs action in attempting to prosecute that action through the filing of a Motion for Relief from the Automatic Stay was clear evidence that the stay violation had converted to a willful violation, and that therefore the Debtors were entitled to relief under § 362(k) for all damages suffered by the Debtors on and after the filing of the Motion for Relief from the Automatic Stay on September 13, 2017.

Response to Objection to Proposed Order (Feb. 12, 2018) at 1.

On February 27, 2018, the bankruptcy court entered its first order on the OSC. The order specified that the Asafs were in "willful violation of the automatic stay," and scheduled the matter for the prove up hearing. As to the Asafs' objection to the form of the order, the court stated in a footnote:

> The court has reviewed the objection to the order lodged by the Asafs and the Debtors' response, and agrees with the arguments made in the response. The court's finding at the hearing on this matter, as well as the court's prior finding, is that the filing of the Hawaii action was a violation of the automatic stay. Continuing to prosecute that action (including through the filing of the motion for relief from the automatic stay) was evidence that the stay violation was a willful one. Any comment made at the hearing inconsistent with this finding was a misstatement.

Order After Hearing On Order To Show Cause In Re Contempt (Feb. 27, 2018) at p. 2 n.1.

On March 3, 2018, the Asafs filed an opposition to the entered order. They titled the opposition an objection to the court's proposed findings of fact and conclusions of law and request for clarification. The objection in large part questioned the footnote the court added to the entered order. The Asafs maintained that it was impossible to tell from the order what actions, other than the filing of the relief from stay motion, the court viewed as a continuation of the Hawaii Action and hence a willful violation of the automatic stay. The Asafs characterized the hearing as a proceeding on contempt, and argued that an evidentiary hearing was required to determine the willfulness of the Asafs' stay violation. The Asafs argued that the procedures the court followed and its findings were insufficient to support the court's contempt finding.

### 5. The Debtors' Damages Prove-Up.

To establish their damages, the debtors submitted the declaration of their counsel William Beall. Beall generally described his billing practices, and he attached to his declaration his billing statements covering both the relief from stay and show cause proceedings through February 6, 2018. The billings included fees for the relief from stay proceedings totaling $2,565, fees for the show cause proceedings totaling $5,415, and costs for the show cause proceedings of $77.60 for the transcript from the relief from stay proceedings. Beall stated that the size of the bills increased largely as a result of the Asafs' specious arguments. Beall further indicated that some of this increase was attributable to the January 2018 mudslides, the resulting continuances of the first show cause hearing, and the reassignment of the bankruptcy case from Judge Carroll to Judge Saltzman.

On February 23, 2018, the Asafs filed an opposition to the fee prove up declaration. The opposition raised virtually no challenge to the reasonableness of the fees or the necessity of the services performed. Instead, the Asafs mainly argued that only $1,686.50 of the fees related to the OSC proceedings were compensable because the remainder were incurred after the stay violation had been remedied by the dismissal of the Hawaii Action. The Asafs also argued that none of the debtors' fees incurred in defending against the relief from stay motion were compensable. The latter argument mostly recapped the Asafs' contentions

14

that the relief from stay motion was not, itself, a violation of the stay – willful or otherwise.

On February 27, 2018, the debtors filed their reply to the Asafs' damages prove-up opposition. In relevant part, the debtors supplemented their billings to include fees for the show cause proceedings from and after February 6, 2018, in the total amount of $3,342.50. The debtors also included a request for projected fees of $475 for the estimated amount of time for the final show cause hearing.

**6.      The Final Hearing And The Damages Order.**

On March 13, 2018, the bankruptcy court held its final show cause hearing. At the outset of the hearing, the bankruptcy court reiterated its statement from the February 27, 2018 order that the filing of the relief from stay motion was not a stay violation.  Rather, the court explained, the continued existence of the Hawaii Action was evidence that the stay violation had become willful. The bankruptcy court then repeatedly asked the parties to address the issues of the amount and reasonableness of the fees requested. The Asafs focused their argument on why the fees for the relief from stay proceedings were not compensable at all. They also restated their argument that the fees for the OSC proceedings incurred after the Hawaii Action was dismissed were not compensable. The debtors responded directly to the arguments the Asafs made. As for the reasonableness and amount of the fees, the debtors pointed out that the

Asafs never specifically disputed that issue. The court then took the matter under submission.

On March 27, 2018, the bankruptcy court entered its order awarding the debtors $5,415.00 in fees. The court calculated the allowed fees as follows:

1.  Attorney's fees of $1,805.00 related to the Debtors' "Ex Parte Motion for Order to Show Cause" . . . Docket No. 216.

2.  Attorney's fees of $1,045.00 after the court's issuance of its "Order to Show Cause in re Contempt of Violation of 11 U.S.C. § 362(a)(1), (5), and (6)" (the "OSC," Docket No. 220), for appearance at the OSC hearing, preparation of order and notice of lodgment, and preparation of declaration regarding damages;

3.  Attorney's fees of $522.50 related to a dispute over the form of the Contempt Order;

4.  Attorney's fees of $1,567.50 related to responding to the Respondents' brief opposing the Debtors' claims for damages; and

5.  Attorney's fees of $475 to attend the March 13, 2018 hearing regarding damages.

Order Awarding Damages (Mar. 27, 2018) at p. 3.

The court then disallowed the remaining balance of $5,985.10 "because the fees and costs submitted are unreasonable, excessive, or did not result from the violation." Order Awarding Damages (Mar. 27, 2018) at

16

p. 3. The order did not otherwise explain the basis for the fees allowed or disallowed. The debtors timely filed a notice of appeal of the award of damages for the stay violation.

## JURISDICTION

The bankruptcy court had jurisdiction over this matter pursuant to 28 U.S.C. § 1334 because it concerned the scope and enforcement of the automatic stay. *See Yellow Express, Inc. v. Dingley (In re Dingley)*, 514 B.R. 591, 597 (9th Cir. BAP 2014), *aff'd on other grounds*, 852 F.3d 1143 (9th Cir. 2017). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court abuse its discretion when it disallowed $5,985.10 of the fees and costs the debtors requested?

2.  Did the bankruptcy court commit clear error when it found that the Asafs had not acted with reckless or callous disregard for the law or the debtors' rights?

## STANDARDS OF REVIEW

We review for an abuse of discretion the amount of fees and costs awarded as damages under § 362(k). *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 7 (9th Cir. BAP 2002); *see also In re Schwartz-Tallard*, 803 F.3d at 1101 (holding that § 362(k) makes fee awards mandatory to the extent they arise from prosecuting an action for damages under the statute, but also holding that the **amount** of fees awarded is a matter subject to the

17

court's discretion).

The bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are clearly erroneous. *Olomi v. Tukhi (In re Tukhi)*, 568 B.R. 107, 112-13 (9th Cir. BAP 2017) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc)). The court's factual findings are not clearly erroneous unless they are "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.*

## DISCUSSION

Importantly, the Asafs did not appeal the bankruptcy court's determination that they willfully violated the automatic stay. The only order on appeal is the award of damages, the only appellants are the debtors, and the only issues appealed are the partial denial of the debtors' attorney's fees and the decision not to award punitive damages. Moreover, while the parties and the court have referenced contempt, the underlying motion, order, and appeal involve damages under § 362(k) only. Section 362(k) provides in relevant part that, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1). An award of costs and attorney's fees is mandatory upon a finding that the stay was willfully violated. Though courts are statutorily authorized to award punitive damages for

18

willful stay violations, the decision to do so remains committed to the bankruptcy court's discretion.

## A.     Denial Of Attorney's Fees.

In aggregate, the debtors requested allowance of $11,400.10 in fees and costs as damages, and an award of punitive damages, under § 362(k). Of that amount, the bankruptcy court disallowed $5,985.10, and denied punitive damages. The bankruptcy court explained that it was disallowing this amount "because the fees and costs submitted are unreasonable, excessive, or did not result from the violation." Order Awarding Damages (Mar. 27, 2018) at p. 3. The debtors challenge the amount of fees and costs disallowed. Their argument is twofold: (1) the bankruptcy court's finding was insufficient; and (2) the finding was clearly erroneous.

### 1.     Governing Legal Standards.

#### a.     Reasonable Attorney's Fees As An Element Of Damages.

The debtors do not dispute that the bankruptcy court applied the correct legal standards. In *In re Schwartz-Tallard*, 803 F.3d at 1101, the Ninth Circuit, sitting en banc, held that a § 362(k) damages award **must** include the debtor's reasonable attorney's fees incurred in prosecuting an action for damages under the statute. But *Schwartz-Tallard* emphasized that bankruptcy courts have discretion over the amount of fees awarded and that the fees must be reasonable: "Only an award of fees reasonably

incurred is mandated by the statute; courts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees. Sound exercise of this discretion will provide a sufficient check on any abuses that might otherwise arise." *Id.*

Consequently, even though fees and costs are an element of actual damages under § 362(k), the same principles that govern the award of professional compensation under § 330 also guide the allowance of fees and costs under § 362(k). *In re Roman*, 283 B.R. at 9-11; *Sundquist v. Bank of Am., N.A. (In re Sundquist)*, 566 B.R. 563, 588 (Bankr. E.D. Cal. 2017), partially vacated on other grounds, 580 B.R. 536 (Bankr. E.D. Cal. 2018). Hence, the reasonable value of services typically is determined by using the "lodestar" approach and by considering the particular circumstances of each case.[5] *In re Roman*, 283 B.R. at 11; *In re Sundquist*, 566 B.R. at 594-95. Because there was no challenge to the reasonableness of the hourly rate billed, we focus upon the reasonableness of the hours billed.

In the context of § 362(k), the reasonableness inquiry also must include an examination of whether the debtor had the ability to mitigate the amount of damages incurred and whether the debtors exercised that ability. *In re Roman*, 283 B.R. at 12; *In re Sundquist*, 566 B.R. at 594-95. One

---

[5] Under the lodestar approach, the bankruptcy court determines the reasonable amount of fees by multiplying the number of hours reasonably spent by the reasonable hourly rate of the professional. *Law Offices of David A. Boone v. Derham–Burk (In re Eliapo)*, 468 F.3d 592, 598 (9th Cir. 2006).

way to determine whether the debtors complied with their duty to mitigate is to consider who caused the attorney's fees to be incurred – the debtors or their creditor. *See In re Roman*, 283 B.R. at 12.

### b. Determining Reasonableness - Discretion And Methodology.

The bankruptcy court has broad discretion in determining what amount of fees is reasonable under the circumstances. *Koncicky v. Peterson (In re Koncicky)*, Appeal No. W-07-1170-MkPaJ, 2007 WL 7540997, at \*3 (9th Cir. BAP Oct. 19, 2007); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) ("The district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, we defer to its determination . . . .").[6] We necessarily afford considerable deference to the bankruptcy court's reasonableness assessment because of its first-hand experience with the attorney's services and performance during the course of the bankruptcy proceedings. *Thomas v. Namba (In re Thomas)*, Appeal No. CC-07-1053-PaBaK, 2007 WL 7541008, at \*12 (9th Cir. BAP Nov. 5, 2007) (citing *Red Carpet Corp. of Panama City Beach v. Miller (In re Red Carpet Corp. of Panama City)*, 902 F.2d 883, 891–92 (11th Cir. 1990)).

The Ninth Circuit's decision in *Leichty v. Neary (In re Strand)*, 375 F.3d

---

[6] Both the debtors and the Asafs have cited to *Gates*, a federal civil rights decision, to support their respective arguments on appeal. While the prevailing concerns and circumstances in civil rights cases and bankruptcy cases differ somewhat, we find *Gates* helpful in articulating what courts generally must do when they determine what constitutes a reasonable award of attorney's fees.

854 (9th Cir. 2004), exemplifies the extent of deference we must afford the bankruptcy court's reasonableness determination. There, the bankruptcy trustee's attorney sought, in total, $34,457 in fees. Of this amount sought, $19,065 arose from the trustee's litigation against the Internal Revenue Service ("IRS"). *Id.* at 857. The bankruptcy court only allowed half of the IRS litigation fees sought, finding that the minimal potential benefit to the estate from the IRS litigation did not justify the attorney's aggressive pursuit of this litigation. *Id.* at 859-61. On appeal, the Ninth Circuit upheld the bankruptcy court's determination and disallowance of 50% of the attorney's IRS-related fees. The Ninth Circuit explained that the bankruptcy court appropriately took into account the degree of potential benefit from the IRS litigation and reasonably determined the allowable amount of IRS-related fees. *Id.*

It is instructive to compare the Ninth Circuit analysis in *In re Strand* with its analysis in *Gates*, where the district court allowed a discounted fee request of the plaintiffs' attorneys arising in a civil rights action in the amount of $5,627,399.66. *Gates*, 987 F.2d at 1396. In *Gates*, the attorneys voluntarily had reduced their fee request by making $108,495.80 in specific "billing judgment" deductions and by agreeing to a 10% across-the-board deduction. *Id.* at 1398. The district court held that the "lodestar amount is reasonable and justified by ample documentation." *Id*. at 1397. Additionally, the court reasoned that the voluntary reduction

22

"compensated for any overbilling or duplication the court found suggested in the record." *Id.* On the other hand, the defendants claimed that the plaintiffs' voluntary reduction did not adequately account for overstaffing, lumping, use of inexperienced attorneys, duplication, and excessive conferences amongst the attorneys. *Id.* at 1398.

The Ninth Circuit again began its analysis recognizing the general rule of deference afforded district courts in exercising their discretion as to the reasonableness of fees. *Id.* The Ninth Circuit acknowledged that, particularly in the case of voluminous billings, district courts are not expected to allow and disallow billing entries on an item-by-item basis. *Id.* at 1399-1400. Nor was the district court, under the circumstances of that case, required to expressly reject each and every one of the defendants' objections. *Id.* at 1400. The Ninth Circuit reasoned that such attention to detail would constitute an "unnecessary expenditure of precious, and already strained, judicial resources." *Id.* Indeed, the court recognized the utility of percentage reductions of fees in certain instances. *Id.*

Nonetheless, the Ninth Circuit vacated the district court's allowance of the fees. *Id.* at 1402. The Ninth Circuit held that, in order to permit the appellate court to conduct its review of the district court's allowance and disallowance of fees, the district court must provide a "concise but clear" explanation for its fee award. *Id.* at 1398 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 485 (1983)). This requires "some indication of how it arrived at

23

the amount of compensable hours for which fees were awarded to allow for meaningful appellate review." *Id*. (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir. 1988)). Further explaining this requirement, the Ninth Circuit wrote, "[a]lthough we do not require 'an elaborately reasoned, calculated, or worded order . . . [and] a brief explanation of how the court arrived at its figures will do, . . . something more than a bald, unsupported amount is necessary.'" *Id*. (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 n.3 (9th Cir. 1987)) (internal citation omitted).

According to the Ninth Circuit, the district court's cursory statement approving the discounted fee request, "affords us no explanation as to how the court arrived at ten percent as the correct reduction and thus, it does not allow for us meaningfully to assess its determination." *Id.* at 1400.

We acknowledge that *Gates* is a federal civil rights case involving a $5 million fee request that warranted heightened scrutiny of the fees requested. Even so, this Panel has applied almost identical reasoning in its bankruptcy decisions, when the bankruptcy court's ruling did not adequately explain the allowance and disallowance of much smaller fee requests. *See, e.g.*, *Lobel & Opera v. United States Tr. (In re Auto Parts Club, Inc.)*, 211 B.R. 29 (9th Cir. BAP 1997) ($137,033.50 in fees); *In re Dutta*, 175 B.R. 41 (9th Cir. BAP 1994) ($25,046.00 in fees).

For instance, in *In re Dutta*, we vacated and remanded for further

24

findings, where the bankruptcy court disallowed $6,502.50 of $25,046 in requested attorney's fees. *Id.* at 47-48. In disallowing these fees, the bankruptcy court relied on a preprinted checklist form of order. *Id.* at 45. In the form order, the bankruptcy court ticked off roughly half the fifteen stated grounds for disallowing fee requests, including but not limited to the following: "lumping of services," "excessive phone calls with client/others," "excessive time spent on task," "duplication of services," "necessity for service," and "rate is in excess of prevailing local rates." *Id.* On appeal, we noted that the record did not appear to support several of the grounds the bankruptcy court ticked off as justifying the disallowance of fees. *Id.* at 46-47. We held that the bankruptcy court's reasonableness determination must include a "clear and concise explanation" of the fees allowed and disallowed, citing the same Supreme Court authority the Ninth Circuit relied on in *Gates*. *See id.* at 46 (citing *Hensley*, 461 U.S. at 437). We concluded:

> While a trial court need not necessarily explain its analysis in terms of elaborate mathematical calculations, for example, it must provide sufficient insight into its exercise of discretion to allow an appellate court to exercise its reviewing function. In the absence of such a sufficient explanation, the fee award must be remanded to provide such an explanation.

*Id*.

Meanwhile, in *In re Auto Parts Club*, the bankruptcy court disallowed two thirds of the roughly $150,000 in fees and costs requested by counsel

for the official committee of unsecured creditors. *In re Auto Parts Club, Inc.*, 211 B.R. at 30-31. The sole reason the bankruptcy court offered for the disallowance concerned the lack of benefit to the estate from counsel's services. *Id.* at 34-36. The bankruptcy court explained that, once the interested parties agreed to sell the debtor's business, counsel should have drastically scaled back its services in light of the fact that additional services after that point were of little or no prospective benefit to the estate. *Id.*

As in *In re Dutta*, the *In re Auto Parts Club* panel vacated and remanded for further findings. *Id.* at 36. We explained that the bankruptcy court made no findings explaining why counsel should receive significant reductions for services performed before agreement was reached for the sale of the debtor's business or why absolutely no compensation should be allowed for services provided after the sale was agreed to. *Id.* Nor was it evident from the record why the court disallowed the fees in this manner. *Id.*

In sum, *Gates*, *In re Auto Parts Club*, and *In re Dutta* collectively stand for the proposition that, when the bankruptcy court determines the amount of fees to allow and disallow, it must give a clear and concise explanation of how it arrived at its figures. As explained below, the bankruptcy court did not sufficiently explain why it disallowed over half of the fees requested by the debtors' counsel.

## 2. Analysis Of The Amounts Allowed And Disallowed.

Although the bankruptcy court attributed the fees it allowed to various tasks, it did not similarly attribute the fees and costs it disallowed. Instead, it merely stated that $5,985.10 in fees and costs were disallowed as excessive, unreasonable or unrelated to the stay violation. Unfortunately, neither the fees allowed or disallowed wholly match the billings submitted by the debtors' counsel. Therefore, we cannot tell from the face of the court's order which fees troubled the court or which specific grounds for disallowance the court relied upon. That said, the bankruptcy court did break down the allowed fees into components and provide some identification that tracks the billing statements. Together with the declarations of the debtors' counsel and the parties' statements on appeal, we are largely able to identify which fees were allowed, and then deduce what fees and costs were disallowed.

### a. Fees Arising From Relief From Stay Motion.

The debtors requested a total of $2,565.00 (incurred in September, October and November[7]) for defending against the Asafs' relief from stay motion. Because the bankruptcy court did not attribute any of the fees it allowed to the discrete matter involving the defense of the relief from stay

---

[7] The debtors' fees in November included more than just work on the relief from stay motion. However, the billing statement segregated the time related to the relief from stay motion, thereby facilitating the evaluation of the debtors' fees with respect to this task.

motion, we can deduce that it disallowed these fees in their entirety.[8]

Nor is the reason for that disallowance subject to legitimate dispute. Of the three reasons the bankruptcy court gave for disallowing fees, only the causation ground – not related to the stay violation – explains the total disallowance of these fees. Moreover, these fees were the focus of much of the Asafs' arguments. The entirety of the record has given us a clear and concise understanding of the basis for the bankruptcy court's disallowance of this subset of fees.

Although the bankruptcy court originally considered the Asafs' motion for relief from stay as evidence of their willful violation of the stay, it ultimately disallowed all fees the debtors requested as arising from their defense of the relief from stay motion. We agree with the bankruptcy court that the debtors' fees related to the relief from stay motion did not arise from the stay violation for purposes of awarding damages under § 362(k). It is well settled that "[t]he automatic stay does not apply to proceedings initiated against the debtor if the proceedings are initiated in the same

---

[8] Generally speaking, Rules 7052 and 9014(c) make Civil Rule 52(a) applicable in most adversary proceedings and contested matters. Civil Rule 52(a)(1) requires the bankruptcy court to render factual findings. However, the Ninth Circuit has held that Civil Rule 52(a) does not apply to motions for attorney's fees. *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1388 (9th Cir.1990), *overruled on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also In re Dutta*, 175 B.R. at 47 (applying *D'Emanuele's* holding to bankruptcy court fee application proceedings). Even so, this does not obviate the need for a "clear and concise explanation" for the bankruptcy court's reasonableness determination. *In re Dutta*, 175 B.R. at 47.

28

bankruptcy court where the debtor's bankruptcy proceedings are pending." *Snavely v. Miller (In re Miller)*, 397 F.3d 726, 730 (9th Cir. 2005). In fact, the Ninth Circuit has indicated that a timely relief from stay motion seeking annulment is a potential **remedy** for a stay violation rather than a continuation of it. *See Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 573 (9th Cir. 1992*)* ("If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue."); *see also In re Biehl*, Case No. 6: 13-bk-26277-MH, 2017 WL 1040941, at *3 (Bankr. C.D. Cal. Mar. 13, 2017) (holding that a stay annulment motion is not, itself, a violation of the automatic stay).

The debtors' argument on this point is short but somewhat difficult to follow. They rely on the standard of review for factual findings – the clearly erroneous standard – and contend that the bankruptcy court's determination that the relief from stay-related fees did not arise from the stay violation was not supported by the record. The debtors' argument misses the point. Based on the authorities set forth above, as a matter of law, the $2,565.00 the debtors incurred in defending against a bona fide stay annulment motion did not arise from the stay violation.[9] Accordingly, out of the disallowed fees and costs totaling $5,985.10, we agree with the

---

[9] The result might be different if the stay annulment motion lacked any factual or legal basis.

bankruptcy court that $2,565.00 for work related to the relief from stay motion was not compensable under § 362(k). This leaves $3,342.50 in disallowed fees and $77.60 in costs to examine.

### b. Fees And Costs Incurred Regarding The Order To Show Cause.

Based upon the billing statements, the debtors' counsel sought additional fees for November (exclusive of the fees for relief from stay) and December, 2017 through February 2018. The parties agree that the remainder of the fees billed in November relate to the OSC, and were allowed by the bankruptcy court. The billing entry descriptions match the subject matter descriptions in the court's order for the debtors' motion for the OSC. Moreover, the fees for the additional November billings tie to the specific amount the court allowed as related to the debtors' motion for OSC - $1,805.00.

The bankruptcy court also allowed $1,045.00 for "issuance of its 'Order to Show Cause in re Contempt for Violation of 11 U.S.C. 362(a)(1), (5), and (6)' ... for appearance at the OSC hearing, preparation of order and notice of lodgment, and preparation of declaration regarding damages." The award in the order appears to match both the substance and amount for three of the five billing entries for the debtors' counsel's original February statement (February 1-6, 2018). The two remaining entries for this statement are both for one-tenth of an hour, totaling $95.00. The first of

these entries is for calendaring dates, while the second entry is for an email to the client regarding mediation. It appears that the bankruptcy court disallowed these entries as excessive or unreasonable. The entry for calendaring dates reasonably could be construed as non-legal work that constitutes overhead and is not compensable as attorney fees. *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 659 n.5 (9th Cir. 1985). As for the entry for the email, the bankruptcy court presumably concluded that this time entry related to mediation activities and not to the stay violation.

The bankruptcy court next allowed $522.50 "related to a dispute over the form of the Contempt Order." The first three billing entries for the second February statement, covering February 8-12, 2018, specifically relate to this dispute and match the amount allowed. Additionally, the court allowed attorney fees in the amount of $475.00 to attend the March 13, 2018 damages hearing. This matches the billing entry for March 13, 2018, for $475.00 to attend the damages hearing.

Finally, the court allowed $1,567.50 "related to responding to the Respondents' brief opposing the Debtors' claims for damages." Given the structure of the order and the chronological progression of the other amounts allowed, these fees appear to relate to seven billing entries between February 23-27, 2018. However, these entries total $2,345.00. Through a process of elimination, one can combine several of the entries to arrive at the $1,567.50 allowed by the court. Unfortunately, there are two

31

combinations of entries possible to reach this result. Unlike the other categories, the court's description for this component of the fees allowed does not provide any additional insight as to which fees were disallowed. We are unable, therefore, to conclude which fees were awarded and which were disallowed in the second February billing statement.

Based upon the fees specifically allowed by the bankruptcy court we can also surmise that certain other fees were disallowed. Specifically, the description of the allowed fees suggests that all of the billing entries for December 2018 and January 2018 were disallowed. Unlike the fees allowed, there is no discussion as which of the disallowed fees were "unreasonable, excessive, or did not result from the violation." Ultimately, we are left to speculate as to which fees were allowed and which were disallowed. And as to the disallowed fees, we must further speculate as to why they were disallowed. Although the reasons that some of the fees were disallowed appear more apparent than others, we must still speculate. The court's order did not provide a clear and concise statement as to which fees were disallowed or why such fees were disallowed.

c.      **Disallowance Of Costs.**

Finally, the debtors requested reimbursement of only one expense: the $77.60 cost of the transcript from the relief from stay hearing. Given the specific amounts the bankruptcy court allowed and the balance disallowed, the bankruptcy court must have disallowed this cost. It is unclear why the

bankruptcy court did so. On this record, this cost seems neither excessive nor unreasonable. Clearly, the ordering and submission of the transcript was related to the OSC proceedings and played an integral role at the February 1, 2018 show cause hearing. During that hearing, the bankruptcy court twice referred to the findings made at the relief from stay hearing that the Hawaii Action was filed in violation of the stay and was void. In addition, the transcript evidenced the debtors' demand, made in open court, for the dismissal of the Hawaii Action. If the Asafs harbored any doubt about the status of the Hawaii Action as a continuing stay violation and the need to fully dispose of it, that doubt must have ended at the time of the relief from stay hearing. The hearing transcript made this clear. The utility of this transcript was bolstered by the fact that different judges presided over the relief from stay proceedings and the show cause proceedings.

That being said, we ultimately are left to speculate why the bankruptcy court disallowed the transcript cost. Because we must remand for further findings on the remaining unallocated portions of the disallowed fees, the bankruptcy court may amend its findings in relation to denial of this cost (in case we have misconstrued the basis for the bankruptcy court's disallowance), or the court may reconsider the disallowance of this cost if it chooses to do so.

### d.    Closing Remarks On Analysis Of Fees Disallowed.

While the record suggests much of the court's reasoning, it does not enable us to understand all of it. Accordingly, we conclude that the court's findings were not sufficiently clear and concise to permit meaningful appellate review. Although the fees relating to the motion for relief from stay present a discrete subset, and the record supports denial of those fees, because we must remand this matter for further explanation we are not inclined to sever one component.  Rather, we will remand the totality of the matter in the hope of avoiding any further confusion. On remand, the bankruptcy court on further consideration may do any of the following: (1) provide further explanation why the subject fees were excessive, unreasonable, or unrelated to the stay violation; (2) provide an alternate or different basis for their disallowance (e.g., failure to mitigate); or (3) reconsider the allowance or disallowance of those fees.

### 3.    Denial Of Punitive Damages.

Section 362(k) specifically provides for the award of punitive damages in "appropriate circumstances." The bankruptcy court relied upon established Ninth Circuit law holding that punitive damages cannot be awarded under § 362(k) unless the stay violator acted with "'reckless or callous disregard for the law or rights of others.'" *Snowden v. Check Into Cash of Wash., Inc. (In re Snowden)*, 769 F.3d 651, 657–58 (9th Cir. 2014) (quoting *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 228 (9th Cir. 1989)).

34

Generally speaking, there are two underlying purposes for punitive damage awards: to punish outrageous conduct and to deter future similar conduct. *Smith v. Wade*, 461 U.S. 30, 54 (1983) (citing Restatement (Second) of Torts § 908(1) (1977)). As stated in *Smith*:

> The focus is on the character of the tortfeasor's conduct –
> whether it is of the sort that calls for deterrence and
> punishment over and above that provided by compensatory
> awards. If it is of such a character, then it is appropriate to . . .
> assess punitive damages . . . . To put it differently, society has
> an interest in deterring and punishing all intentional or reckless
> invasions of the rights of others . . . .

*Id.*

The debtors do not challenge the bankruptcy court's application of punitive damages law. Rather, they dispute the bankruptcy court's finding on the Asafs' reckless and callous disregard for their rights. According to the bankruptcy court, the debtors did not show that the Asafs acted with reckless or callous disregard. The debtors effectively contend that the bankruptcy court should have inferred the requisite state of mind from the Asafs' specious litigation positions in the relief from stay proceedings and the show cause proceedings. This quintessentially is an issue of fact. *Id.* at 52.

For purposes of this discussion we will assume without deciding that most of the Asafs' litigation positions were specious. We further will assume that the bankruptcy court **could have** inferred the requisite state of

35

mind from the way the Asafs conducted themselves in the relief from stay proceedings and the show cause proceedings. Nonetheless, we are not persuaded that the bankruptcy court's key punitive damages finding was clearly erroneous. While many of the litigation positions the Asafs took were at best misguided, the positions were not necessarily indicative of a reckless or callous disregard. Furthermore, there was other evidence in the record that militated against a finding of reckless or callous disregard. The record reflects that, for over a year, the continued existence of the stayed Hawaii Action was a complete non-issue for both parties. And when the parties' focus did return to the Hawaii Action, the first (and only) thing the Asafs voluntarily did was seek an annulment of the stay – which would have remedied the stay violation.

It is also worth noting that the extent and degree of the misconduct involved in this matter, the degree and nature of harm caused to the debtors, and the level of reprehensibility of the misconduct are relatively minimal. This is especially so when compared to the misconduct of the stay violators in the above-referenced punitive damages cases. *See, e.g., In re Snowden*, 769 F.3d at 654-55; *In re Sundquist*, 566 B.R. at 591-92, 611–12. It is appropriate to consider factors like these in the process of assessing the propriety of awarding punitive damages. *In re Sundquist*, 566 B.R. at 610. In concluding that the record presented did not support a finding of reckless or callous disregard, this is exactly what the bankruptcy court did.

36

We are not saying that we condone the Asafs' delay in dismissing the Hawaii Action or that this delay was legally permissible. Rather, we conclude that under the particular circumstances of this matter the bankruptcy court's controlling punitive damages finding was logical, plausible and supported by the record.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's denial of punitive damages. As to the award of attorney fees, we VACATE AND REMAND for further proceedings as specified in the body of this decision.